# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

)
PUBLIC CITIZEN HEALTH,                       )
RESEARCH GROUP, et al.,                       )
                                             )
                    Plaintiffs,              )          No. 18-cv-1729-TJK
                                             )
              v.                             )
                                             )
ALEXANDER ACOSTA, Secretary,                 )
United States Department of Labor, et al.,   )
                                             )
                    Defendants.              )
                                             )

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Sean M. Sherman (D.C. Bar No. 1046357)
Michael T. Kirkpatrick (D.C. Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 8

    I.    Plaintiffs' injury would be redressed by a favorable decision because the
        information at issue is not exempt from disclosure under FOIA. ............................... 8

    II.   OSHA's rescission of the Rule's compliance deadline was not an exercise of
        enforcement discretion and is reviewable under the APA. ................................. 12

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Air Alliance Houston v. EPA*,
  No. 17-1155, __ F.3d __, 2018 WL 4000490 (D.C. Cir. Aug. 17, 2018)........................14

*Amador County v. Salazar*,
  640 F.3d 373 (D.C. Cir. 2011).).....................................................................................12

*American Mining Congress v. Mine Safety & Health Administration*,
  995 F.2d 1106 (D.C. Cir. 1993) ......................................................................................17

*Association of Flight Attendants-CWA, American Federation of Labor and Congress of
  Industrial Organizations v. Huerta*,
  785 F.3d 710 (D.C. Cir. 2015) ........................................................................................16

*Bauer v. DeVos*,
  325 F. Supp. 3d 74 (D.D.C. 2018) ..................................................................................13

*Charles v. Office of the Armed Forces Medical Examiner*,
  35 F. Supp. 2d 86 (D.D.C. 2013) ....................................................................................11

*Citizens for Responsibility & Ethics in Washington v. Executive Office of the President*,
  587 F. Supp. 2d 48 (D.D.C. 2008)....................................................................................9

*Citizens to Preserve Overton Park v. Volpe*,
  401 U.S. 402 (1971)........................................................................................................12

*Clean Air Council v. Pruitt*,
  862 F.3d 1 (D.C. Cir. 2017) ...........................................................................12, 13, 16, 17

*Crowley Caribbean Transport Inc. v. Pena*,
  37 F.3d 671 (D.C. Cir. 1994) ..........................................................................................16

*Department of the Air Force v. Rose*,
  425 U.S. 352 (1976)........................................................................................................11

*Drake v. FAA*,
  291 F.3d 59 (D.C. Cir. 2002) ..........................................................................................17

*Electronic Privacy Information Center v. Department of Homeland Security*,
  653 F.3d 1 (D.C. Cir. 2011) ............................................................................................17

*Environmental Defense Fund, Inc. v. EPA*,
  716 F.2d 915 (D.C. Cir. 1983) ........................................................................................13

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ............................................................................................. 12, 13

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................................................................... 17

*Hi-Tech Furnace System, Inc. v. FCC*,
  224 F.3d 781 (D.C. Cir. 2000) ................................................................................... 12

*Interstate Commerce Commission v. Brotherhood of Locomotive Engineers*,
  482 U.S. 270 (1987) .................................................................................................... 17

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .............................................................................................. 12, 17

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual*
  *Automobile Insurance Co.*,
  463 U.S. 29 (1983) ...................................................................................................... 14

*Jerome Stevens Pharmaceuticals, Inc. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) .................................................................................... 8

*Legal Assistance for Vietnamese Asylum Seekers v. Department of State*,
  104 F.3d 1349 (D.C. Cir. 1997) ................................................................................. 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 8

*Massachusetts Public Interest Research Group v. Nuclear Regulatory Commission*,
  852 F.2d 9 (1st Cir. 1988) ......................................................................................... 17

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) ........................................................................... 16

*National Family Planning & Reproductive Health Ass'n, Inc. v. Sullivan*,
  979 F.2d 227 (D.C. Cir. 1992) ................................................................................... 13

*Natural Resources Defense Council v. NHTSA*,
  894 F.3d 95, 115 (2d Cir. 2018) ................................................................................ 13

*Open Communities Alliance v. Carson*,
  286 F. Supp. 3d 148, 163 (D.D.C. 2017) ............................................................. 13, 14

*Padula v. Webster*,
  822 F.2d 97 (D.C. Cir. 1987) ..................................................................................... 17

*People for the Ethical Treatment of Animals v. USDA*,
   797 F.3d 1087 (D.C. Cir. 2015) ...................................................................9

*Perez v. Mortgage Bankers Ass'n*,
   135 S. Ct. 1199 (2015) .............................................................................12

*Public Citizen v. Shalala*,
   932 F. Supp. 13 (D.D.C. 1996) ................................................................15

*Schuler v. United States*,
   617 F.2d 605 (D.C. Cir. 1979) ...................................................................8

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ..................................................................8

*Steenholdt v. FAA*,
   314 F.3d 633 (D.C. Cir. 2003) ..................................................................17

*Sturm, Ruger & Co., Inc. v. Chao*,
   300 F.3d 867 (D.C. Cir. 2002), ..................................................................3

*Webster v. Doe*,
   486 U.S. 592 (1988) .................................................................................17

**Statutes and Regulations**

5 U.S.C. § 553 .................................................................................................12

5 U.S.C. § 701(a)(2) .......................................................................................12

5 U.S.C. § 706(2)(A) .......................................................................................14

5 U.S.C. § 706(2)(D) .......................................................................................12

29 U.S.C. § 651 .................................................................................................2

29 U.S.C. § 657 .................................................................................................3

29 U.S.C. § 673 .................................................................................................3

29 C.F.R. § 1904.0 ............................................................................................3

29 C.F.R. § 1904.32 ..........................................................................................3

29 C.F.R. § 1904.35 ..........................................................................................9

29 C.F.R. § 1904.41 ...............................................................................4, 6, 15, 17

DOL, Final Rule, Improve Tracking of Workplace Injuries and Illnesses,
    81 Fed. Reg. 29624 (May 12, 2016) ......................................................... *passim*

DOL, Final Rule, Improve Tracking of Workplace Injuries and Illnesses: Delay of
    Compliance Date,
    82 Fed. Reg. 55761 (Nov. 24, 2017)...................................................................6

DOL, Final Rule, Occupational Injury and Illness Recording and Reporting
    Requirements—NAICS Update and Reporting Revisions,
    79 Fed. Reg. 56129 (Sept. 18, 2014), ................................................................9

DOL, Proposed Rule, Improve Tracking of Workplace Injuries and Illnesses: Proposed
    Delay of Compliance Date,
    82 Fed. Reg. 29621 (June 28, 2017). ..................................................................6

DOL, Proposed Rule, Tracking of Workplace Injuries and Illnesses,
    83 Fed. Reg. 36494 (July 30, 2018)..............................................................7, 13

**Miscellaneous**

OSHA, Fatality Inspection Data,
    https://www.osha.gov/dep/fatcat/dep_fatcat.html  ...............................................9

OSHA, Final Rule Issued to Improve Tracking of Workplace Injuries and Illnesses,
    https://www.osha.gov/recordkeeping/finalrule/index.html .................................6

OSHA, Injury & Illness Recordkeeping Forms - 300, 300A, 301,
    https://www.osha.gov/recordkeeping/RKforms.html ....................................3, 10

OSHA, Severe Injury Reports,
    https://www.osha.gov/severeinjury/index.html  ...................................................9

OSHA Notice, Site-Specific Targeting 2016 (SST-16),
    https://www.osha.gov/sites/default/files/enforcement/directives/18-01_CPL-02.pdf..................12

OSHA Trade Release, The Department of Labor Plans to Propose Rule to Better Protect
    Personally Identifiable Information (July 26, 2018),
    https://www.osha.gov/news/newsreleases/trade/07262018 .................................7

## INTRODUCTION

The Electronic Reporting Rule of the Occupational Safety and Health Administration (OSHA) requires covered establishments to submit, by July 1, 2018, certain work-related injury and illness data recorded on their 2017 OSHA Forms 300 and 301. When OSHA promulgated the Rule, it stated that it would post the data on its website to allow public health organizations to use the data to identify and analyze threats to worker health and safety and to develop solutions. Plaintiffs—three public health organizations—intend to use the data in their work. In May 2018, OSHA rescinded the reporting requirement. In this lawsuit, plaintiffs challenge OSHA's rescission of the requirement. Because OSHA's suspension of the Rule without observance of notice-and-comment procedures and without a reasoned explanation violates the Administrative Procedure Act (APA), and because plaintiffs are suffering irreparable harm from OSHA's unlawful conduct, plaintiffs filed a motion for a preliminary injunction seeking an order enjoining OSHA's suspension of the Rule. *See* Pls. Mot. Prelim. Inj., ECF No. 7. That motion is pending.

OSHA has now moved to dismiss plaintiffs' complaint on the same two grounds that it opposed plaintiffs' pending motion for a preliminary injunction. In so doing, OSHA ignores the arguments and authorities that plaintiffs set forth in support of their motion.

First, OSHA argues that plaintiffs lack standing. Although OSHA does not dispute that plaintiffs have suffered an injury caused by OSHA's suspension of the Rule, it argues that plaintiffs cannot demonstrate redressability because the information sought might be exempt from disclosure under the Freedom of Information Act (FOIA). OSHA's argument is baseless. As OSHA previously concluded, the anonymous OSHA Form 300 and 301 data that it is required to collect under the Electronic Reporting Rule are *not* exempt from disclosure under FOIA because none of the required fields identify individual employees. Indeed, OSHA has previously and regularly

1

released the same information in response to FOIA requests, and OSHA requires that the same information be made available at the worksite to employees, former employees, and their representatives.

Second, OSHA argues that this action is not justiciable. At the same time, the agency does not dispute that the suspension of a legislative rule is subject to judicial review under the APA for procedural and substantive validity—a concession that should be the end of the matter. Nevertheless, OSHA attempts to recast its rescission of the compliance deadline as a nonbinding policy statement setting forth an exercise of prosecutorial discretion that is immune from judicial review. A policy statement, however, is subject to review under the arbitrary and capricious standard. Moreover, because OSHA's refusal to collect the data as required by the Rule is not an enforcement decision, OSHA's argument lacks merit, and its authorities are inapposite.

The Court should deny OSHA's motion to dismiss.

## BACKGROUND

The Occupational Safety and Health Act (OSH Act) was enacted in 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651(b), by, among other means, "providing for appropriate reporting procedures … [that] will help achieve the objectives of this [Act] and accurately describe the nature of the occupational safety and health problem," *id.* § 651(b)(12). To accomplish this goal, the Act mandates that "[e]ach employer shall make, keep and preserve, and make available" records of workplace injuries and illnesses "as the Secretary [of the Department of Labor] … may prescribe by regulation as necessary or appropriate for the enforcement of [the Act] or for developing information regarding the causes and prevention of occupational accidents and illnesses." *Id.* § 657(c)(1); *see also id.* § 673(a), (e). The Act further directs the Secretary to "prescribe

regulations requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses." *Id.* § 657(c)(2); *see id.* § 673(e). The Secretary has delegated these statutory responsibilities and authorities to OSHA. *See Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 868 (D.C. Cir. 2002).

Accordingly, since 1971, OSHA has promulgated regulations "to require employers to record and report work-related fatalities, injuries, and illnesses." 29 C.F.R. § 1904.0; *see* 81 Fed. Reg. 29624, 29625 (May 12, 2016) (citing 36 Fed. Reg. 12612 (July 2, 1971)). OSHA's current regulations mandate that employers with more than 10 employees in most industries maintain on site records of occupational injuries and illnesses. *See* 29 C.F.R. part 1904; 81 Fed. Reg. at 29624.

OSHA regulations provide that those establishments must record each recordable employee injury and illness on a "Log" (the OSHA Form 300) and must prepare a supplementary "Incident Report" that provides additional details about each case recorded (the OSHA Form 301). At the end of each year, such establishments are required to prepare an "Annual Summary Form" (the OSHA Form 300A) derived from the information in the Log. *See* 29 C.F.R. § 1904.32(b); *see generally* OSHA, Injury & Illness Recordkeeping Forms - 300, 300A, 301, https://www.osha.gov/recordkeeping/RKforms.html (providing links to the three forms and instructions for their use).

Before 2016, OSHA received injury and illness data on an *ad hoc* basis through onsite inspections. In addition, from 1996 to 2012, OSHA received such data through the OSHA Data Initiative (ODI), an annual survey through which OSHA requested Form 300A data from approximately 80,000 large establishments in certain high-hazard industries. To provide OSHA a more effective way of targeting its resources, as well as for research and other purposes, federal

agencies and advisory groups beginning in the 1980s recommended that OSHA develop a system requiring establishments to provide the agency with injury and illness data from the OSHA forms.

On May 12, 2016, OSHA issued a rule entitled "Improve Tracking of Workplace Injuries and Illnesses," 81 Fed. Reg. 29624, referred to as the Electronic Reporting Rule. The Electronic Reporting Rule, effective January 1, 2017, requires the electronic submission of workplace injury and illness records. The Rule requires certain establishments to submit annually to OSHA the three forms that they are required to maintain under part 1904 (Forms 300, 301, and 300A). *Id.* at 29668; *see* 29 C.F.R. § 1904.41. In a section entitled "Benefits of Electronic Data Collection," OSHA explained that "[w]ith the information obtained through this final rule, employers, employees, employee representatives, the government, and researchers may be better able to identify and mitigate workplace hazards and thereby prevent worker injuries and illnesses." 81 Fed. Reg. at 29629.

The Rule mandates phased-in submission deadlines for certain establishments with 250 or more employees and certain establishments in high-risk industries with 20 or more employees (collectively, covered establishments) to electronically submit their injury and illness records to OSHA. *See* 29 C.F.R. § 1904.41(c). For 2016 injury and illness records, the Rule required covered establishments to submit electronically their 2016 summary Form 300As to OSHA by July 1, 2017. *See* 29 C.F.R. § 1904.41(c)(1) (2017). For 2017 injury and illness records, the Rule required covered establishments to submit electronically to OSHA information from OSHA forms 300, 301, and 300A by July 1, 2018. *See* 29 C.F.R. § 1904.41(c)(1) (2018) (providing that covered establishments "must submit the required information" from OSHA Forms 300, 301, and 300A by the "submission deadline" of "July 1, 2018"). Beginning in 2019 and every year thereafter, the Rule requires covered establishments to submit the information on all three OSHA forms by

March 2. *Id.* § 1904.41(c)(2). After considering alternative approaches, OSHA concluded that these phased-in deadlines would "provide sufficient time to ensure comprehensive outreach and compliance assistance in advance of implementation." 81 Fed. Reg. at 29640.

When it issued the Rule, OSHA stated that "OSHA intends to post the establishment-specific injury and illness data it collects under this final rule on its public Web site at www.osha.gov." *Id.* at 29625. OSHA explained that it would make publicly available all of the fields collected in OSHA Forms 300 and 300A, as well as all fields on OSHA Form 301 that did not include personally identifying information. *Id.* at 29632. OSHA stated that publicly posting the data would improve the ability of public health organizations to analyze the causes of work-related injury and disease in the United States and to develop solutions to reduce or eliminate such injury and disease. *Id.* at 29631.

OSHA repeatedly emphasized that the information collected would be made public "in accordance with FOIA." *Id.* at 29658–59, 29660–62. OSHA explained that the fields it would collect from the OSHA Form 300 and 301 forms "will not include personally-identifiable information." *Id.* at 29663. OSHA noted that it "has effective safeguards in place to prevent the disclosure of personal or confidential information contained in the recordkeeping forms and submitted to OSHA," *id.* at 29661, and would only post information after the agency conducted a review using "software that will search for, and de-identify, personally identifiable information," *id.* at 29662. OSHA also rejected commenters concerns about possible re-identification of employees at smaller establishments. It explained that, because only establishments with 250 or more employees were required to submit the OSHA Forms 300 and 301, it was "less likely that employees in such large establishments will be identified based on the posted recordkeeping data." *Id.* at 29662.

On June 28, 2017, OSHA issued a notice of proposed rulemaking to delay the initial deadline for electronic submission of 2016 Form 300A data from July 1, 2017, to December 1, 2017. *See* Proposed Rule, Improve Tracking of Workplace Injuries and Illnesses: Proposed Delay of Compliance Date, 82 Fed. Reg. 29261. OSHA noted that it intended to issue a separate proposal to reconsider, revise, or remove other provisions of the Electronic Reporting Rule, but that the proposed rule addressed only the July 1, 2017, deadline for submission of Form 300A data. *See id.* at 29261–62. On November 24, 2017, the agency issued a final rule delaying the deadline for the submission of 2016 Form 300A data to December 15, 2017. *See* Final Rule, Improve Tracking of Workplace Injuries and Illnesses: Delay of Compliance Date, 82 Fed. Reg. 55761 (Nov. 24, 2017). The rule did not alter any other deadlines.

In May 2018, OSHA announced the suspension of the regulation providing that covered establishments "must submit the required information" from OSHA Forms 300 and 301 by the "submission deadline" of "July 1, 2018." *See* 29 C.F.R. § 1904.41(c)(1) (2018). OSHA did not publish a notice of the suspension of the deadline in the Federal Register and did not solicit public comment. Instead, OSHA announced the suspension on its website:

> Covered establishments with 250 or more employees are only required to provide their 2017 Form 300A summary data. ***OSHA is not accepting Form 300 and 301 information at this time.*** OSHA announced that it will issue a notice of proposed rulemaking (NPRM) to reconsider, revise, or remove provisions of the "Improve Tracking of Workplace Injuries and Illnesses" final rule, including the collection of the Forms 300/301 data. The Agency is currently drafting that NPRM and will seek comment on those provisions.

*See* OSHA, Final Rule Issued to Improve Tracking of Workplace Injuries and Illnesses, https://www.osha.gov/recordkeeping/finalrule/index.html (located in section entitled "Compliance schedule") (last visited Nov. 2, 2018) (emphasis in original).

On July 25, 2018, plaintiffs filed this suit challenging OSHA's partial suspension of the Electronic Reporting Rule. Plaintiffs are three public health organizations—Public Citizen Health Research Group, Council of State and Territorial Epidemiologists, and American Public Health Association—that rely on the type of data required to be reported and made publicly available under the Rule and FOIA to effectively track, investigate, and work to prevent work-related injury and disease in the United States. *See* Carome Decl. ¶¶ 3–4; Harrison Decl. ¶¶ 5, 7; Benjamin Decl. ¶¶ 3–4.[1] If the requirements for electronic submission of OSHA Form 300 and 301 data remain suspended, plaintiffs and their members will lose access to an important source of timely injury and illness information, which will make it more difficult for each of them and their members to analyze the causes of workplace injuries and illnesses and work toward preventing them. *See* Carome Decl. ¶ 4; Harrison Decl. ¶ 7; Benjamin Decl. ¶ 4. In their complaint, plaintiffs allege that OSHA's suspension of the Rule without observance of notice-and-comment procedures and without a reasoned explanation violates the APA.

After plaintiffs filed their lawsuit, OSHA issued a trade release announcing that it would issue a notice proposing to remove from the Electronic Reporting Rule the requirements that covered establishments submit OSHA Form 300 and 301 data. *See* OSHA Trade Release, The Department of Labor Plans to Propose Rule to Better Protect Personally Identifiable Information (July 26, 2018), https://www.osha.gov/news/newsreleases/trade/07262018. OSHA claimed removing the requirements would protect workers from having their personally identifiable information disclosed under FOIA. *Id.* On July 30, 2018, OSHA's notice of proposed rulemaking was published in the Federal Register. *See* Proposed Rule, Tracking of Workplace Injuries and

---

[1] Plaintiffs filed four declarations in support of their motion for a preliminary injunction. For the Court's convenience, plaintiffs have attached the earlier-filed declarations to this memorandum.

Illnesses, 83 Fed. Reg. 36494 (July 30, 2018). In the proposed rule, OSHA stated that it intended to end collection of OSHA Form 300 and 301 data, purportedly to eliminate any risk to worker privacy from public disclosure of those records under FOIA. *See id.* at 36497. OSHA acknowledged that any records that included personally identifiable medical data would be exempt from disclosure, but OSHA expressed concern that a federal court might erroneously order the release of exempt information. *Id.* Thus, OSHA proposed to stop collecting the Form 300 and 301 data altogether. The public comment period on the proposal concluded on September 28, 2018. *See id.* at 36494.

## LEGAL STANDARD

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

**I.      Plaintiffs' injury would be redressed by a favorable decision because the information at issue is not exempt from disclosure under FOIA.**

OSHA challenges plaintiffs' standing solely on the redressability prong of the three-part test for Article III standing. Defs. Mot. 10–11 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). OSHA argues that it is "purely speculative" that plaintiffs' injury will be redressed by an order requiring OSHA to comply with the Electronic Reporting Rule and collect the Form 300 and 301 data because plaintiffs would have to use FOIA to force OSHA to release the data, and OSHA will assert that all useful material is exempt from disclosure because its release would constitute

an unwarranted (or in the words of FOIA exemption 6, "clearly unwarranted") invasion of personal

privacy. *Id.* OSHA is wrong.[2]

OSHA wrongly asserts that the data at issue is exempt from disclosure under FOIA

exemptions 6 or 7(C). OSHA has regularly disclosed under FOIA the Form 300 and 301 data in

its possession, *see* 81 Fed. Reg. at 29650, and OSHA regulations require that employers provide

copies of the same parts of the OSHA Form 300 and the Form 301 at issue here to current and

former employees and employee representatives upon request, *see* 29 C.F.R. § 1904.35. "OSHA

authorized this right of access after balancing the privacy rights of individuals with the public

interest for disclosure," and concluding that the public interest outweighed any potential privacy

interest. *See* 81 Fed. Reg. at 29661. In addition, OSHA requires employers to report to OSHA

"severe injuries" within 24 hours, *see* 79 Fed. Reg. 56129 (Sept. 18, 2014), and fatalities within

8 hours, *see id.* at 56141, and the agency posts these establishment-specific fatality and severe

injury reports on its website, *see* OSHA, Fatality Inspection Data, https://www.osha.gov/dep/

fatcat/dep_fatcat.html;  OSHA, Severe  Injury  Reports,  https://www.osha.gov/severeinjury/

index.html. Similarly, the Mine Safety and Health Administration (MSHA), the Federal Railroad

---

[2] OSHA concedes that it is irrelevant that plaintiffs would have to use FOIA to obtain the data that OSHA is refusing to collect. Injuries caused by an agency's unlawful refusal to collect data have long been recognized as sufficient to confer standing even where the plaintiff will need to request the records once the agency has them. *See People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (stating that "denial of access to bird-related … information including, in particular, investigatory information" caused by agency's failure to comply with applicable regulation constituted a "cognizable injury sufficient to support standing"); *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 939 & n.9 (D.C. Cir. 1986) (describing plaintiffs as "injured by a loss of information" due to agency's failure to issue regulations); *Citizens for Responsibility & Ethics in Wash. v. Exec. Office of the President*, 587 F. Supp. 2d 48, 60–61 (D.D.C. 2008) (holding that plaintiffs who had pending FOIA requests and intended to file future FOIA requests had standing to contest unlawful government policy that would result in the destruction of records). It is also undisputed that plaintiffs have used FOIA to request release of records like those at issue here and that they will continue to do so in the future. *See, e.g.*, Second Carome Decl. ¶¶ 3–6 & Ex. A.

Administration (FRA), and the Federal Aviation Administration (FAA) all post injury and illness data on their websites. *See* 81 Fed. Reg. at 29656.

During the rulemaking, OSHA determined that the data could be released under FOIA and announced its intention to publicly post the data on its website even in the absence of a request. This decision posed no risk to individual privacy, because the Electronic Reporting Rule does not require establishments to submit fields from the OSHA forms that identify individuals, either by name or otherwise. *See* 81 Fed. Reg. at 29650.[3] And OSHA can prevent erroneous submission of information that would invade personal privacy because OSHA controls which fields from Forms 300 and 301 can be submitted electronically.

Nevertheless, OSHA argues that, although the Rule does not require submission of any personally-identifiable information, the anonymous Form 300 and 301 data that OSHA is required to collect might be "re-identified" through some unexplained method. Defs. Mot. 11. OSHA's argument is directly contrary to the agency's conclusion in the Electronic Reporting Rule. There, OSHA rejected commenters' concerns about possible re-identification, explaining that because only establishments with 250 or more employees were required to submit the OSHA Forms 300 and 301, it was "less likely that employees in such large establishments will be identified based on

---

[3] The fields that employers are required to submit to OSHA from the Form 300 log of work-related injuries include case number; job title; where the event occurred; a description of the injury; a checkbox choice for the outcome (death, days away from work, or remained at work); the number of days away from work or on restricted duty; and a checkbox choice for the type of illness (injury, skin disorder, respiratory condition, poisoning, hearing loss, all other illnesses). *See* OSHA, Injury & Illness Recordkeeping Forms - 300, 300A, 301, https://www.osha.gov/recordkeeping/RKforms.html.

The fields that OSHA will collect from the OSHA Form 301 (fields 10 through 18) ask employers to provide certain general information about each case: case number; date of event; time employee began work; time of event; what employee was doing just before incident; what happened; what was the injury or illness; what object or substance directly harmed the employee; and if the employee died, when did death occur. *See id.*

the posted recordkeeping data." *See* 81 Fed. Reg. at 29662. Ultimately, after considering numerous comments raising privacy concerns, OSHA concluded that it could publicly disclose the specified portions of the OSHA Form 300 and Form 301. *See id.* at 29660–62.

In support of its argument that the Form 300 and 301 information it is required to collect qualifies for withholding under FOIA exemptions 6 and 7(C), OSHA cites only *Charles v. Office of the Armed Forces Medical Examiner*, 935 F. Supp. 2d 86, 97 (D.D.C. 2013), *cited in* Defs. Mot. 11. In *Charles*, the court concluded that redacted final autopsy reports and in-theater medical records for deceased military personnel were *not* exempt from disclosure under exemption 6, and explained that the exemption "creates a heavy burden for an agency" that requires the demonstration of "'privacy interests more palpable than mere possibilities.'" 935 F. Supp. 2d at 97, 99 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 382 (1976)). *Charles* does not support OSHA's positon here.

Finally, OSHA argues that plaintiffs' injury might not be redressed by a favorable decision because, if it had not rescinded the reporting requirement, covered establishments might nonetheless choose to violate the law and refuse to submit the required information. Defs. Mot. 11–12. OSHA provides no evidentiary basis for its assertion, and it has overstated the risk of massive noncompliance. Indeed, OSHA has already received 2017 OSHA Form 300A data from hundreds of thousands of covered establishments, which is based on the OSHA Form 300 and 301 data, and the agency has announced plans to conduct random inspections of establishments that failed to submit that data "to discourage employers from not reporting injury and illness

11

information in order to avoid inspection." *See* OSHA Notice, Site-Specific Targeting 2016 (SST-16), https://www.osha.gov/sites/default/files/enforcement/directives/18-01_CPL-02.pdf.

## II.    OSHA's rescission of the Rule's compliance deadline was not an exercise of enforcement discretion and is reviewable under the APA.

The APA embodies "a basic presumption of judicial review." *Hi-Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 788 (D.C. Cir. 2000) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)). There is a "strong presumption that Congress intends judicial review of administrative action," and "each category of non-reviewability must be construed narrowly." *Amador Cty. v. Salazar*, 640 F.3d 373, 379 (D.C. Cir. 2011). The exception to APA review in section 701(a)(2) for actions "committed to agency discretion by law" is a "very narrow" one, reserved for "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)).

**A.** The APA generally requires agencies to give interested individuals notice and the opportunity to comment before promulgating rules, *see* 5 U.S.C. § 553, and empowers courts to hold unlawful and set aside agency actions taken "without observance of procedure required by law," *id.* § 706(2)(D). Plaintiffs' notice-and-comment claim is straightforward: The Electronic Reporting Rule is a substantive rule issued through notice-and-comment rulemaking, and OSHA rescinded a portion of the Rule (the requirement that employers submit 2017 Form 300 and 301 data by July 1, 2018) without notice-and-comment, in violation of the APA.

Although "agencies have broad discretion to reconsider a regulation … [t]o do so … they must comply with the [APA], including its requirements for notice and comment." *Clean Air Council v. Pruitt*, 862 F.3d 1, 9–10 (D.C. Cir. 2017) (citing 5 U.S.C. § 553 and *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015)); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("The [APA] makes no distinction … between initial agency action and

subsequent agency action undoing or revising that action."). Thus, once a rule is finalized, an agency "'may not alter such a rule without notice and comment.'" *Clean Air Council*, 862 F.3d at 9 (quoting *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 234 (D.C. Cir. 1992)); *see Envt'l Def. Fund, Inc. v. EPA*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("Suspension or delayed implementation of a final regulation normally constitutes substantive rulemaking."). Moreover, the compliance date set forth in a rule is a substantive aspect of the rule, and thus, like other aspects of the rule, can be altered only through notice-and-comment rulemaking. *See Clean Air Council*, 862 F.3d at 6 (concluding that an agency action that "suspended [a] rule's compliance deadlines … [is] tantamount to amending or revoking a rule," and collecting cases); *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 163 (D.D.C. 2017) (holding that an agency's suspension of a compliance deadline established by regulation required notice and comment rulemaking); *see also Bauer v. DeVos*, 325 F. Supp. 3d 74, 97–101 (D.D.C. 2018) (finding procedural requirement of Higher Education Act, which applies in same circumstances as notice and comment under APA, applies to suspension of effective date of final regulation).

Thus, here, OSHA's suspension of the Rule's compliance date, announced without engaging in notice-and-comment rulemaking, violates the APA.[4] Indeed, reflecting the applicability of the APA's notice-and-comment requirement, OSHA previously delayed the reporting deadline for the 2016 OSHA Form 300A through notice-and-comment rulemaking, *see* 82 Fed. Reg. at 29261, and OSHA has now issued a notice of proposed rulemaking to eliminate

---

[4] OSHA's July 2018 notice of proposed rulemaking to rescind the requirement does not cure the failure to conduct rulemaking before suspending the requirement. "An agency may not promulgate a rule suspending a final rule and then claim that post-promulgation notice and comment procedures cure the failure to follow, in the first instance, the procedures required by the APA." *NRDC v. NHTSA*, 894 F.3d 95, 115 (2d Cir. 2018) (citation omitted).

the requirement that establishments submit data from OSHA Forms 300 and 301, *see* 83 Fed. Reg. at 36507.

**B.** Further, the APA provides that a reviewing court should set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is "arbitrary and capricious" if the action was not based on a "reasoned analysis" that indicates the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) (internal quotation marks omitted). In considering whether agency action is arbitrary and capricious, a reviewing court will look to whether the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [made a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 43. A court cannot "supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (internal quotation marks omitted). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50 (citations omitted); *accord S. Co. Servs., Inc. v. Fed. Energy Regulatory Comm'n*, 416 F.3d 39, 47 (D.C. Cir. 2015). This well-established law applies fully to agency actions revising regulatory deadlines. *See, e.g.*, *Air All. Hous. v. EPA*, No. 17-1155, __ F.3d __, 2018 WL 4000490, at *12 (D.C. Cir. Aug. 17, 2018) (concluding EPA's promulgation of twenty-month delay rule was arbitrary and capricious); *Open Cmtys. All.*, 286 F. Supp. 3d at 174 (concluding that HUD's two-year suspension of rule was arbitrary and capricious based on *State Farm* factors).

14

Here, plaintiffs' have explained that OSHA rescinded the July 1, 2018, deadline for covered establishments to submit 2017 OSHA Form 300 and 301 data with only a cursory and inadequate explanation. And the pending motion for a preliminary injunction elaborates on the legal basis for plaintiffs' APA claim. In its motion to dismiss, OSHA does not address any of the cases plaintiffs previously cited and does not point to a single case where a court has concluded that the suspension of a substantive rule is not subject to judicial review under the APA.

Instead, OSHA attempts to recast its suspension of the Rule's submission requirement as a "mere policy statement regarding its exercise of prosecutorial discretion" that is not subject to judicial review. Defs. Mot. 14. To begin with, although "an individual nonenforcement decision" may be unreviewable, "an agency's statement of a general enforcement policy" is not. *See NAACP v. Trump*, 298 F. Supp. 3d 209, 229 (D.D.C. 2018) (citing *Crowley Caribbean Transp., Inc. v. Pena*, 37 F.3d 671, 676–77 (D.C. Cir. 1994)). Thus, even under OSHA's framing, the decision to suspend the compliance deadline is subject to review under the arbitrary and capricious standard. *See supra* p. 14; *see also NAACP*, 298 F. Supp. 3d at 237–43 (concluding rescission was arbitrary and capricious).

In any event, OSHA's characterization does not accurately reflect the nature of its action. *Cf. Public Citizen v. Shalala*, 932 F. Supp. 13, 17 n.5 (D.D.C. 1996) (rejecting agency's attempt to recast a decision creating an exemption from a regulation as an enforcement decision). Neither the mandatory reporting requirement in the Electronic Reporting Rule nor OSHA's May 2018 announcement suspending the requirement are properly characterized as an exercise of prosecutorial discretion. The Electronic Reporting Rule does not speak in terms of OSHA's enforcement authority, but provides in mandatory terms that covered establishments "must submit the required information" from OSHA Forms 300, 301, and 300A by the "submission deadline,"

"July 1, 2018." 29 C.F.R. § 1904.41(c)(1) (2018). In its May 2018 announcement, OSHA suspended this requirement: "Covered establishments with 250 or more employees are only required to provide their 2017 Form 300A summary data. **OSHA is not accepting Form 300 and 301 information at this time.**" *See* OSHA, Final Rule Issued to Improve Tracking of Workplace Injuries and Illnesses, https://www.osha.gov/recordkeeping/finalrule/index.html (located in section entitled "Compliance schedule") (emphasis in original) (last visited Nov. 2, 2018). As the D.C. Circuit has held, an agency lacks the authority "not to enforce a lawfully issued final rule while it reconsiders it." *Clean Air Council*, 862 F.3d at 7–9 (punctuation omitted). That principle applies fully here.

Although failure to comply with the July 1, 2018, deadline could have subjected covered establishments to penalties had OSHA not unlawfully rescinded that aspect of the Rule, OSHA is wrong that the potential for penalties converts any suspension of a duly promulgated regulation into a policy statement regarding the exercise of prosecutorial discretion. *See id.* at 7 (concluding agency stay of deadline reviewable both because it lifted a regulatory deadline and eliminated the risk of penalties for violating that deadline). Tellingly, none of the cases on which OSHA relies involve agency statements suspending regulations. In *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710 (D.C. Cir. 2015), the court concluded that the agency action at issue—a notice providing guidance to aviation safety inspectors—was not a legislative rule. At the same time, however, the court noted that "if a second rule repudiates or is irreconcilable with a prior legislative rule, the second rule *must* be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." *Id.* at 718 (quoting *Am. Mining Cong. v. MSHA*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)) (emphasis added). And in *EPIC v. DHS*, 653 F.3d 1, 7–8 (D.C. Cir. 2011), the court concluded that the Department of Homeland Security's announcement

that it would use new technology to screen airline passengers was *not* a general statement of policy, but was a substantive rulemaking that required notice and comment procedures. To the extent that the case is relevant here, it supports plaintiffs.

OSHA's remaining cases are inapposite because they do not address agency actions suspending or revising regulations promulgated pursuant to notice-and-comment rulemaking. *See Lincoln*, 508 U.S. 182 (addressing agency action discontinuing a program funded from a lump-sum appropriation); *Webster v. Doe*, 486 U.S. 592 (1988) (addressing agency action terminating an employee for national security reasons); *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 272 (1987) (addressing agency refusal to reconsider an order); *Heckler v. Chaney*, 470 U.S. 821 (1985) (addressing agency decision not to institute enforcement proceedings); *Drake v. FAA*, 291 F.3d 59, 70–71 (D.C. Cir. 2002) (same); *Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003) (addressing agency decision rescinding appointment of individual as a designated engineering representative); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349 (D.C. Cir. 1997) (addressing agency action requiring processing of visa applications for migrants of certain nationalities in their home countries); *Mass. Pub. Interest Research Grp. v. U.S. Nuclear Regulatory Comm'n*, 852 F.2d 9 (1st Cir. 1988) (addressing agency denial of request for specific enforcement action); *Padula v. Webster*, 822 F.2d 97 (D.C. Cir. 1987) (addressing agency hiring decision).

Here, by contrast, OSHA concedes that the submission deadline in the Electronic Reporting Rule was issued through notice and comment rulemaking and required covered establishments to submit the OSHA Form 300 and 301 data by July 1, 2018. 29 C.F.R. § 1904.41(c)(1). OSHA's May 2018 announcement suspending the submission requirement lifted that obligation. OSHA's

action suspending the submission requirement is therefore subject to review for procedural and

substantive validity under the APA.

## CONCLUSION

For these reasons, this Court should deny defendants' motion to dismiss.

Dated: November 13, 2018                     Respectfully submitted,

                                             /s/ Sean M. Sherman
                                             Sean M. Sherman (D.C. Bar No. 1046357)
                                             Michael T. Kirkpatrick (D.C. Bar No. 486293)
                                             Public Citizen Litigation Group
                                             1600 20th Street NW
                                             Washington, DC 20009
                                             (202) 588-1000

                                             *Counsel for Plaintiffs*