# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN HEALTH RESEARCH
GROUP *et al.*,

        *Plaintiffs*,

    v.

ALEXANDER ACOSTA *et al.*,

        *Defendants*.

Civil Action No. 18-1729 (TJK)

## MEMORANDUM OPINION AND ORDER

As part of its effort to improve the collection of work-related injury data, the

Occupational Safety and Health Administration ("OSHA"), an agency of the Department of

Labor, requires qualifying employers to record work-related injuries and illnesses on a set of

standardized forms. Initially, OSHA only occasionally collected these forms from employers,

either during on-site inspections or as part of broader industry surveys. But in May 2016, OSHA

issued a new rule requiring employers to submit them—three in total—electronically each year.

In May 2018, however, and after the first filing deadline had passed, OSHA announced

employers were only required to submit one of the three forms while it considered revising or

rescinding the existing rule, citing privacy and waste concerns. In fact, OSHA stated that, until it

completed its review, it would not accept two of the three forms from employers at all.

Plaintiffs in this action, three public-health advocacy groups, view these forms as

valuable sources of workplace health data, and they allege that they intended to use that data in

their research and advocacy efforts once OSHA collected it. Plaintiffs commenced this action

after OSHA announced that it was suspending the rule while it engaged in notice-and-comment

rulemaking, and that it would not accept two of the forms during that time. Their complaint

alleges that OSHA's conduct violated the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 500 *et seq.*, and thus unlawfully deprived them of access to an important source of workplace

health data. *See* ECF No. 1 ("Compl."). They seek declaratory and injunctive relief requiring

OSHA to lift its suspension of the filing deadlines and to accept all three forms.

Over six weeks after filing their complaint, Plaintiffs filed a motion for preliminary

injunction. ECF No. 7 ("PI Mot."). Plaintiffs did not request a hearing on their motion. While

that motion was pending, Defendants filed a motion to dismiss the complaint for lack of

jurisdiction, on the grounds that Plaintiffs lack standing, and for failure to state a claim, on the

ground that the challenged conduct was an exercise of discretion not subject to judicial review

under the APA. ECF No. 13 ("MTD").

The Court finds that Plaintiffs have standing to proceed with their claims and that the

challenged agency conduct was not simply an exercise of enforcement discretion, but rather a

complete suspension of a regulatory deadline subject to review. As a result, the Court will deny

Defendants' motion to dismiss. Nonetheless, the Court finds that Plaintiffs have not

demonstrated that they will suffer irreparable harm absent preliminary injunctive relief, and it

will therefore deny Plaintiffs' motion for a preliminary injunction as well.[1]

## I.    Background

### A.    The Electronic Reporting Rule

Under the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* (the "OSH Act"

or "Act"), the Secretary of Labor is authorized, among other things, to promulgate regulations

---

[1] In considering the instant motions, the Court has relied on all relevant parts of the record, including: ECF No. 7-2 ("Carome Decl."); ECF No. 7-3 ("Benjamin Decl."); ECF No. 7-4 ("Harrison Decl."); ECF No. 8 ("PI Opp'n"); ECF No. 9 ("PI Reply"); ECF No. 9-1 ("2d Carome Decl."); ECF No. 9-2, Ex. A ("Michaels Decl."); ECF No. 10 ("Supp. Decl. Mot."); ECF No. 12 ("Supp. Decl. Opp'n"); ECF No. 14 ("MTD Opp'n"); and ECF No. 15 ("MTD Reply").

requiring employers to "make, keep and preserve, and make available to the Secretary," occupational health records. *Id.* § 657(c)(1); *see also id.* § 657(c)(2) (authorizing the Secretary to issue regulations requiring employers to "maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses"). The Act also provides that, "[i]n order to further the purposes of this chapter, the Secretary . . . shall develop and maintain an effective program of collection, compilation, and analysis of occupational safety and health statistics." *Id.* § 673(a). Pursuant to that authority, OSHA requires employers with more than 10 employees to use a set of standardized forms when recording workplace injuries and illnesses—Form 300 to generate a log of all work-related injuries or illnesses, Form 301 to generate an incident report for each individual case, and Form 300A to prepare an annual summary derived from the information collected on the log. *See* 29 C.F.R. §§ 1904.1(a), 1904.29. Initially, OSHA did not require employers to submit these forms, and it only collected them on an *ad hoc* basis, either during inspections of individual workplace sites or through industry-specific surveys. *See* Improve Tracking of Workplace Injuries and Illnesses, 81 Fed. Reg. 29,624, 29,627 (May 12, 2016). But in May 2016, OSHA issued a new rule requiring certain employers to submit the three forms electronically on an annual basis (the "Electronic Filing Rule" or "Rule"). *See* 29 C.F.R. § 1904.41.

Under the Electronic Filing Rule, employers with 250 or more employees are required to electronically submit to OSHA Forms 300, 300A, and 301 each year, and employers in certain industries with 20 or more employees must electronically submit Form 300A. *Id.* The Rule, however, was set to come into full effect progressively over the course of several years. For the first year, all covered employers were required to submit only the summary Form 300A for calendar-year 2016 by July 1, 2017. *See id.* § 1904.41(c); Improve Tracking of Workplace

Injuries and Illnesses: Delay of Compliance Date, 82 Fed. Reg. 55,761 (Nov. 24, 2017). For the

following year, covered employers were required to submit their applicable forms—all three for

employers with 250 or more employees, but only Form 300A for employers with 20 or more but

less than 250 employees—for calendar-year 2017 by July 1, 2018. 29 C.F.R. § 1904.41(c). And

then beginning in 2019, covered employers were required to submit their applicable forms for

the preceding calendar year by March 2. *Id.*

On June 28, 2017, shortly before the first deadline, OSHA issued a notice of proposed

rulemaking to delay the initial filing deadline. *See* Improve Tracking of Workplace Injuries and

Illnesses: Proposed Delay of Compliance Date, 82 Fed. Reg. 29,261 (June 28, 2017). And on

November 24, 2017, OSHA published a final rule delaying that first filing deadline until

December 15, 2017. 82 Fed. Reg. 55,761. Then, in May 2018—after the first filing deadline

had passed—OSHA posted the following announcement on its website:

> Covered establishments with 250 or more employees are only
> required to provide their 2017 Form 300A summary data. ***OSHA
> is not accepting Form 300 and 301 information at this time***.
> OSHA announced that it will issue a notice of proposed
> rulemaking (NPRM) to reconsider, revise, or remove provisions of
> the "Improve Tracking of Workplace Injuries and Illnesses" final
> rule, including the collection of the Forms 300/301 data. The
> Agency is currently drafting that NPRM and will seek comment on
> those provisions.

Compl. ¶ 20 (quoting OSHA, *Final Rule Issued to Improve Tracking of Workplace Injuries and

Illnesses*, https://osha.gov/recordkeeping/finalrule/index.html) [hereinafter OSHA, *May 2018

Announcement*]. On July 30, OSHA issued the notice of proposed rulemaking to rescind the

electronic filing requirements for Forms 300 and 301. *See* Tracking of Workplace Injuries and

Illnesses, 83 Fed. Reg. 36,494 (proposed July 30, 2018). As part of that notice, OSHA stated

that although "the initial deadline for electronic submission of information from OSHA Forms

300 and 301 by covered establishments with 250 or more employees was July 1, 2018[,]

. . . OSHA will not enforce this deadline without further notice while this rulemaking is underway." *Id.* at 36,496. The public comment period for that proposed rescission closed on September 28, 2018. *See id.* at 36,494.

**B. Plaintiffs' Lawsuit**

Plaintiffs to this action are three organizations engaged in research, education, and advocacy on matters of public health, including issues of workplace health and safety. Public Citizen Health Research Group ("PCHRG") "promotes research-based, system-wide changes in health care policy, including in the area of occupational health, and advocates for improved safety standards at work sites." Compl. ¶ 5. PCHRG alleges that it regularly uses information reported to government agencies, including publicly available data from OSHA, to analyze public health problems. *See id.* American Public Health Association ("APHA"), a public health advocacy group and professional association, "has an Occupational Health and Safety Section that advocates for the health, safety and well-being of workers, families, communities, and the environment." *Id.* ¶ 6. Like PCHRG, APHA states that its members regularly rely on information reported to government agencies and made available to the public. *See id.* The Council of State and Territorial Epidemiologists ("CSTE") "is an organization of member states and territories representing public health epidemiologists," and it likewise alleges that its members use information reported to government agencies to track the incidence of work-related injuries and diseases. *Id.* ¶ 7. PCHRG, APHA, and CSTE (collectively, "Plaintiffs") allege that they each "rely on the type of data required to be reported and made publicly available under the [Electronic Reporting] Rule and [the Freedom of Information Act] to effectively track, investigate, and work to prevent work-related injury and disease in the United States." PI Mot. at 6. And they specifically allege that they intended to use the information submitted by covered

employers under the Electronic Reporting Rule to conduct research on occupational health. *See* Compl. ¶¶ 5-7; *see also* Carome Decl. ¶ 3; Benjamin Decl. ¶ 3; Harrison Decl. ¶¶ 4-5.

On July 25, 2018, Plaintiffs commenced this action, alleging that OSHA's partial suspension of the Electronic Reporting Rule violates the APA and naming as defendants the Secretary of Labor in his official capacity, the Department of Labor, and OSHA (collectively, "Defendants"). *See* Compl. Plaintiffs bring two claims under the APA. First, they allege that "[b]y failing to engage in notice-and-comment rulemaking before suspending the July 1, 2018[] deadline, OSHA failed to observe procedures required by law, in contravention of the APA." *Id.* ¶ 26. And second, they contend that "OSHA's suspension of the requirement that covered establishments submit their 2017 Forms 300 and 301 by July 1, 2018, is arbitrary, capricious, or an abuse of discretion, in contravention of the APA." *Id.* ¶ 29. Plaintiffs seek a declaratory judgment finding OSHA's actions in violation of the APA, a permanent injunction requiring Defendants to "implement and enforce all the requirements of the Electronic Reporting Rule," and an order requiring Defendants to accept submissions under the Rule within 30 days. Compl. at 10.

On September 7, 2018, six weeks after filing their complaint, Plaintiffs filed a motion for a preliminary injunction. They did not, however, request a hearing on their motion. In addition to elaborating on their claims under the APA, Plaintiffs describe the harm that they are allegedly suffering as a result of Defendants' conduct. Specifically, they maintain that when OSHA decided to suspend the submission deadline and to refuse to accept any submissions of Forms 300 and 301, it deprived them of "access to an important source of timely injury and illness information, which will make it more difficult for each of them and their members to analyze the causes of workplace injuries and illnesses and work toward preventing them." PI Mot. at 6.

On October 29, 2018, with Plaintiffs' motion for a preliminary injunction pending,

Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure

12(b)(1) and (b)(6), arguing that Plaintiffs do not have standing to bring their claims and that

they seek to challenge nonjusticiable exercises of OSHA's enforcement discretion. *See* MTD at

1-2, 7. Defendants contend first that Plaintiffs lack Article III standing because the relief that

they seek—an injunction requiring OSHA to lift the suspension of the Electronic Reporting Rule

and accept forms submitted under the Rule—is not likely to redress the injury they have alleged.

Specifically, they argue that OSHA has no intention of making the information it would collect

under the Rule publicly available and that the information would be exempt from disclosure

under the Freedom of Information Act ("FOIA") even if Plaintiffs requested access to it. *See id.*

at 10-12. Alternatively, Defendants argue that even if Plaintiffs have standing, their complaint

must nonetheless be dismissed for failure to state a claim because the conduct Plaintiffs seek to

challenge constitutes an exercise of OSHA's enforcement discretion and is therefore

unreviewable under the APA, 5 U.S.C. § 701(a)(2). *See id.* at 12-16.[2]

Both Plaintiffs' motion for preliminary injunctive relief and Defendants' motion to

dismiss are ripe for review. As Defendants' motion could potentially dispose of the entire

action, the Court will address that motion first.

---

[2] Despite some prior inconsistency within the Circuit, the Court of Appeals has held that "a complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)." *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (citing *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009)).

## II. Motion to Dismiss

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Maron v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, while the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253-55 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

A party may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unlike consideration of a motion under 12(b)(1), "[i]n determining whether a complaint states a claim, the court may [only] consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). Though "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### B. Analysis

#### 1. Standing

The jurisdiction of the federal courts extends only to those cases and controversies "of the justiciable sort referred to in Article III" of the Constitution—that is, only to those claims for which the plaintiff can demonstrate that he has "standing" to bring. *Lujan*, 504 U.S. at 560. "[T]he irreducible constitutional minimum of standing contains three elements." *Id.* First, the plaintiff must have suffered an injury in fact—the "invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Second, there must be a "causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561). And third, "it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

The threshold showing that Plaintiffs must make for each element of standing "depends on the stage of the litigation." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citing *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997)). And at this pleading stage, to survive a motion to dismiss, Plaintiffs "must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Id.* (alteration in original) (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)).

As organizations, Plaintiffs "can assert standing on [their] own behalf, on behalf of [their] members or both." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). Though they do not state so explicitly, Plaintiffs appear to take both avenues. *See* Carome Decl. ¶ 4 (alleging harm suffered by the organization); Benjamin Decl. ¶¶ 2-4 (alleging harm suffered by the organization and its members); Harrison Decl. ¶¶ 5, 7 (alleging harm suffered by the organization and its members). Since Plaintiffs' organizational standing alone would suffice to satisfy Article III's requirements, however, the Court will focus its analysis there. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986). In organizational-standing cases, courts "conduct the same inquiry as in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). Thus, Plaintiffs must demonstrate that, as organizations, they have suffered injuries in fact fairly traceable to Defendants' challenged conduct and likely to be redressed by the requested relief.

In their motion to dismiss, Defendants seize exclusively on the redressability requirement. But this Court has "an independent obligation to determine whether subject-matter jurisdiction exists," and that obligation is not lessened by the chosen scope of the parties' jurisdictional dispute. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Accordingly, the Court will address all three elements of standing in turn.

### a.  Injury in Fact

This Circuit has repeatedly recognized that an organization suffers an injury in fact when it is deprived of information integral to its core activities. *See, e.g.*, *Action All. of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 937-38 (D.C. Cir. 1986) (finding the organization suffered a concrete and specific injury when it was denied "access to information and avenues of redress [it] wish[ed] to use in [its] routine information-dispensing, counseling, and referral activities"); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*

(*PETA*), 797 F.3d 1087, 1095 (D.C. Cir. 2015); *Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006).

Plaintiffs' professed injuries here are no different. Each has alleged that its "activities [are] impeded" when it cannot rely on the information OSHA would ordinarily collect under the Electronic Reporting Rule. *Abigail All.*, 469 F.3d at 133. Michael Carome, PCHRG's director, describes PCHRG's intent to "use the work-related injury and illness data submitted to OSHA . . . to conduct research on issues of workplace health and safety," and that without that data, PCHRG is "substantially limit[ed] [in] the type and amount of information that [it] will be able to use to conduct research." Carome Decl. ¶¶ 3-4. APHA's Executive Director, Georges Benjamin, and CTSE-member and former President Robert Harrison allege identical impairments. *See* Benjamin Decl. ¶¶ 3-4; Harrison Decl. ¶¶ 4-7. Such allegations of injury, particularly at the motion-to-dismiss stage, are sufficient to satisfy the injury-in-fact requirement. *See PETA*, 797 F.3d at 1095.

### b.    Traceability

Plaintiffs without question also satisfy the traceability requirement. The causation element of standing requires "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Here, the causal relationship is quite clear. Plaintiffs allege that OSHA, in violation of the APA, indefinitely suspended the Electronic Reporting Rule without following proscribed statutory procedures and without adequate justification. As a result of that suspension, employers are not required to submit Forms 300 and 301, nor will OSHA even accept those forms if submitted, and thus OSHA no longer collects the occupational health and injury data on which Plaintiffs profess to rely. Defendants' redressability argument—that Plaintiffs would not be able to access the information regardless—does not compel a different conclusion. *See*

*Bennett*, 520 U.S. at 168-69 (concluding that an "injury 'fairly traceable' to the defendant" need not be "an injury as to which the defendant's actions are the very last step in the chain of causation").

### c.      Redressability

Turning finally to the redressability requirement, Plaintiffs must plausibly allege "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103. And it is here, Defendants contend, that Plaintiffs falter.  Defendants first argue that "it is purely speculative that [Plaintiffs] would obtain redress from a favorable decision because the relief they seek is only an order compelling OSHA to *collect* the Forms 300 and 301," and not likewise granting Plaintiffs *access* to that data.  MTD at 11.  Specifically, Defendants note that because OSHA has no intention of publicly sharing the collected information, and indeed that it would withhold the information if requested under FOIA, citing privacy concerns, Plaintiffs, even if they are successful in this suit, would be forced to bring a subsequent FOIA claim in order to access the data.  *See id.*  And FOIA Exemptions 6 and 7(C), Defendants insist, would squarely apply to the records at issue because they contain "[p]ersonally identifiable medical data," rendering any future FOIA request for said data dubious at best.  *See id.* (citing 5 U.S.C. § 552(b)).  Second, Defendants submit that even if the Court orders OSHA to lift the suspension and collect the required forms, "it is far from certain that establishments would file the 2017 data" because the regulatory filing date has already passed.  *Id.* at 11-12.  Given these uncertainties, Defendants maintain that Plaintiffs cannot adequately show that they are likely to actually receive any useful data, thereby redressing their alleged injury, if the Court grants them their requested relief.

Plaintiffs are much more confident in their prospects.  They argue that Defendants' invocation of Exemptions 6 and 7(C) is misguided, as the Electronic Reporting Rule does not

require employers to include any personally identifiable information on Forms 300 or 301. *See* MTD Opp'n at 9. Moreover, Plaintiffs reject Defendants' speculation that if OSHA lifts its suspension of the Electronic Reporting Rule, covered employers will nonetheless "choose to violate the law and refuse to submit the required information," noting that Defendants have no evidence to support this assertion of massive noncompliance and that the available evidence indeed suggests otherwise. *Id.* at 11. Plaintiffs thus maintain that they have met their burden to plausibly allege standing. The Court agrees.

Addressing their latter argument first, Defendants claim that even if the Court orders OSHA to lift its suspension of the Electronic Reporting Rule, employers may nonetheless neglect to file the forms covering calendar-year 2017. But they offer no evidence to support this conjecture, and the existing regulatory framework suggests otherwise. Independent of the Electronic Reporting Rule, covered establishments are still required to record individual incidents and compile a log of such incidents using Forms 301 and 300, respectively. *See* 29 C.F.R. §§ 1904.1, 1904.29. Therefore, there is little reason to assume that employers would encounter any more difficulty meeting the Rule's requirements—submission of records they are already required to maintain—simply because more time has elapsed since the calendar year in question. [3] Without any evidence to suggest otherwise, Defendants cannot rest on speculation that employers may nonetheless decide not to comply with the Rule. And the Court will not assume that employers will take "the extraordinary measure of [refusing to submit the required forms] in violation of the law." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930,

---

[3] The regulation also allows employers to record the information on an "equivalent form," which OSHA has defined as "one that has the same information, is as readable and understandable, and is completed using the same instructions as the OSHA form it replaces." 29 C.F.R. § 1904.29. Whether employers use Forms 300 and 301 or suitable equivalents, however, the reasoning holds.

941 (D.C. Cir. 2004), *abrogated on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017).

Turning next to the question of Plaintiffs' hypothetical FOIA suit, at the outset, the Court notes that the parties appear to assume that the mere fact that Plaintiffs would have to use FOIA to obtain the collected data if Plaintiffs are successful in this action does not alone defeat Plaintiffs' claim of redressability. They both insist, rather, that redressability turns on the potential success of that FOIA claim. *See* MTD at 11; MTD Opp'n at 9 n.2. The Court likewise sees no reason why the extra step of bringing a FOIA claim would *necessarily* mean that Plaintiffs cannot allege a likelihood of redress. *See Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 727 (D.C. Cir. 2015) (per curiam) (collecting cases) ("[I]n our past cases, a plaintiff who could not directly compel the defendant to redress its injury has often been able to establish redressability nonetheless because some independent legal requirement would force the defendant to offer whatever benefit was at issue.").

Ultimately, the crux of the redressability analysis is the *likelihood* that the requested relief will redress the claimed injury. *See Utah v. Evans*, 536 U.S. 452, 464 (2002). It is not a question of whether an order granting Plaintiffs' requested relief will instantly and unquestionably cure their alleged harm. Indeed, Plaintiffs, particularly at this stage of the litigation, are certainly not "required 'to *prove* that granting the requested relief is *certain* to alleviate' their injury." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 811 (D.C. Cir. 1983) (quoting *Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1248 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 340 (1984)); *see also Teton Historic Aviation Found.*, 785 F.3d at 727 ("The standing requirement would be a high wall indeed if a plaintiff could only sue when the defendant was under an inescapable obligation to act as the plaintiff desired."). And in this

case, the Court can determine that likelihood by gauging Plaintiffs' prospects in a subsequent

FOIA action.  To be sure, the Court recognizes that this analysis may not be workable in every

circumstance.  When an organization alleges an informational injury due to some agency action

or inaction, it may be uncertain precisely what information or records the requested relief might

ultimately generate, rendering an analysis under FOIA nearly impossible.  But that is not the case

here, where the specific information that would be subject to Plaintiffs' FOIA request—the data

fields comprising Forms 300 and 301 that covered employers must submit—is clear from the

record.

Under FOIA Exemptions 6 and 7(C), the two exemptions cited by Defendants, the

government may withhold certain records to protect against invasions of personal privacy.  *See* 5

U.S.C. § 552(b)(6), (7)(C).  Exemption 6 specifically covers "personnel and medical files and

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  *Id.* § 552(b)(6).  And Exemption 7(C) covers "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  *Id.* § 552(7).  In applying either exemption, courts must "balance the privacy

interests that would be compromised by disclosure against the public interest in the release of the

requested information."  *100Reporters LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115, 158

(D.D.C. 2017) (quoting *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)). [4]

---

[4] The Court recognizes that, for either exemption, a reviewing court must first determine that the
records at issue are the *type* of records covered by that exemption.  *See McCann v. U.S. Dep't of
Health & Human Servs.*, 828 F. Supp. 2d 317, 322 (D.D.C. 2011).  And though neither party has
addressed this issue, the Court has particular doubts that forms submitted under the Electronic
Reporting Rule would qualify as "records or information compiled for law enforcement
purposes," 5 U.S.C. § 552(b)(7), such that exemption 7(C) would even apply, *see Bartko v U.S.*

However, FOIA provides that an agency must release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), and thus "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In relying on Exemptions 6 and 7(C)'s protection from unwarranted invasions of privacy, Defendants maintain that individuals' privacy interests in their personally identifiable medical records are "paradigmatic examples of materials qualifying for withholding." MTD at 11. The Court has no quarrel with that assertion. But release of the information must implicate "*personal* privacy"; that is, it must risk release into the public knowledge about an *individual's* private information. 5 U.S.C. § 552(b)(6), (7)(C) (emphasis added); *see also Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information *identifying individuals* appearing in law enforcement records." (Emphasis added)).

Here, the information that Plaintiffs contend they would seek from the records compiled by OSHA under the Electronic Reporting Rule is not personally identifiable. The Rule requires employers to submit that data in distinct, standardized fields. On Form 300, the annual incident

---

*Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) ("To qualify as law-enforcement records, the documents must arise out of investigations which focus directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions." (internal quotation marks omitted) (quoting *Rural Housing All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974))); *see also Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 542 (5th Cir. 2002) (noting that OSHA, in response to a FOIA request for documents relating to an investigation of a specific workplace accident, released partially-redacted versions of the "standard inspection forms" despite withholding the rest of the investigatory file under the law-enforcement exemption). Nonetheless, the Court need not address that question, because even if the records qualify under either Exemption, the Court finds that OSHA likely could not withhold so substantial a portion of those records as to deprive Plaintiffs of significant redress.

log, the employer need only list, for each incident, the employee's job title, where the event occurred, a description of the injury, and the number of days away from work or on restricted duty, and then select checkboxes for the outcome of the incident and the category of injury or illness. *See* MTD Opp'n at 10 n.3 (citing OSHA, *Injury & Illness Recordkeeping Forms – 300, 300A, 301* (*OSHA Forms*), https://www.osha.gov/recordkeeping/RKforms.html); *see also* 81 Fed. Reg. at 29,650 (noting that OSHA will not collect employee names). As for Form 301, the Rule states that OSHA "will not collect or publish Field 1 (employee name), Field 2 (employee address), Field 6 (name of treating physician or health care provider), or Field 7 (name and address of non-workplace treating facility)." 81 Fed. Reg. at 29,650. The remaining fields request the employee's date of birth, date hired, and gender, and, most importantly for Plaintiffs' purposes, information describing the specific incident in question. *See* OSHA, *OSHA Forms*, *supra*.

Plaintiffs, in conducting research on matters of occupation health and safety, seek only the de-identified data and descriptions from these forms regarding workplace injuries and illnesses. *See* MTD Opp'n at 10; PI Reply at 5 n.1. That information is contained, in particular, in the fields requesting incident descriptions and outcomes, and nothing in the form instructions requires employers to include any identifying information about the employee or the employer there. In fact, the forms specifically instruct otherwise. *See* OSHA, *OSHA Forms*, *supra*. And the release of that information "constitutes only a *de minimis* invasion of privacy when the identities of [affected individuals] are unknown." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991). Under either exemption, when no more than a *de minimis* privacy interest is at stake, the exemption does not apply. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008); *see also Fed.*

*Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (2d Cir. 1992)

(reasoning that, although Exemption 7(C) imposes a lower standard than Exemption 6 for

showing that a privacy interest outweighs the asserted public interest in records, the same degree

of privacy interest must be asserted to trigger either exemption).

Furthermore, these fields are unquestionably segregable.  No one field is so "inextricably

intertwined" with another as to prevent OSHA from releasing a non-exempt field without

compromising any privacy interest in another.  *Mead Data Cent.*, 566 F.2d at 260.  Thus, even if

a reviewing court finds that the information in one field—employees' birth dates, for example—

might, if released, present a risk of personal intrusion, OSHA can withhold those fields and still

release other fields containing de-identified information regarding the number and nature of the

workplace incidents that Plaintiffs seek.

Defendants nonetheless insist that the records might be "re-identified," thus implicating a

more than *de minimis* privacy interest.  *See* MTD at 11; MTD Reply at 4-5.  Again, the Court

does not disagree with this proposition in the abstract.  *See Dep't of the Air Force v. Rose*, 425

U.S. 352, 378-82 (1976).  But Defendants cannot rely on that speculation wholesale to withhold

each and every form.  *See Arieff v. U.S. Dep't of the Navy*, 712 F.2d 1462 (D.C. Cir. 1983) ("An

item of exempt information [because it is personally identifiable] does not insulate from

disclosure the entire file in which it is contained, or even the entire page on which it appears.").

Moreover, an agency withholding records on the ground that they might be connected to a

particular individual must show "threats to privacy interests more palpable than mere

possibilities." *Rose*, 425 U.S. at 380 n.19.  The two cases Defendants cite for the re-

identification premise make that clear.  In *Arieff*, the Circuit concluded that the withholding

defendant had "established no more than a 'mere possibility' that the medical condition of a

particular individual might be disclosed" by the release of de-identified records and therefore vacated the district court's finding in favor of the defendant. 712 F.2d at 1467-69. And in *Charles v. Office of the Armed Forces Medical Examiner*, the district court found that the agency had "not carried [its] heavy burden of showing more than de minimis privacy interest" in de-identified records in part because it presented "no more than a mere possibility of an invasion of personal privacy." 935 F. Supp. 2d 86, 99 (D.D.C. 2013).

Given these requirements for claiming either exemption, the Court finds it highly unlikely that OSHA can withhold much of the information contained on Forms 300 and 301 submitted under the Electronic Reporting Rule. Form 301, for example, requests specific but brief descriptions of the incident in question, suggesting inputs such as "[c]limbing a ladder while carrying roofing materials," "[w]orker developed soreness in wrist over time" from "daily computer key-entry," or "strained back." OSHA, *OSHA Forms*, *supra*. Similarly, Form 300 suggests such inputs as "[l]oading dock north end" for where the incident occurred and "[s]econd degree burns on right forearm from acetylene torch" for a description of the injury or illness. *Id.* To be sure, "[i]t is conceivable that, as to some segregable portions of the records, [OSHA] can establish more than a 'mere possibility' that" the information on one of the forms can be linked to a particular individual, especially in cases where the nature of the injury or the accident is particularly unique. *Arieff*, 712 F.2d at 1469. Those rare instances can be addressed on a case-by-case basis. But the Court finds it purely speculative that, in the vast majority of the potentially thousands of forms submitted under the Rule, such abbreviated information could be re-identified or the risk of re-identification could not be sufficiently minimized by redacting the unique portions. And critically, to satisfy the redressability requirement, Plaintiffs need not show that their requested relief will grant them all that they seek. Obtaining only some helpful

information compiled under the Electronic Reporting Rule would be enough provided that it would "significantly—rather than completely—redress [Plaintiffs'] injuries." *Int'l Ladies' Garment Workers' Union*, 722 F.2d at 812 n.27. The Court finds it exceedingly unlikely that OSHA would be able to justify withholding, on the basis that each form raises more than a mere possibility that the information contained therein could be "re-identified," so substantial a portion of the forms submitted under the Rule as to prevent Plaintiffs from engaging in meaningful research and analysis of the data that they seek.

At bottom, the Court finds it likely that Plaintiffs would, through FOIA, obtain beneficial workplace injury and illness data from OSHA's Electronic Reporting Rule records. That is sufficient for Plaintiffs to meet their burden, particularly at this stage of the litigation, to demonstrate standing.[5]

### 2. Justiciability of Agency Action

The APA provides for a "basic presumption of judicial review" of agency action. *Tex. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 409 (D.C. Cir. 2012) (quoting *Banzhaf v. Smith*, 737 F.2d 1167, 1168-69 (D.C. Cir. 1984) (en banc)). That presumption does not hold, however, when the action in question "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985). "To determine whether a matter has been committed to agency discretion, [courts] 'consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action.'" *Sierra Club v. Jackson*, 648 F.3d 848, 855

---

[5] The Court recognizes that, ordinarily, it is the withholding agency's burden to show that requested records are exempt. *See Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). But Plaintiffs bear the burden of sufficiently alleging standing, including the redressability requirement. Thus, to satisfy that burden here, Plaintiffs must show that it is likely that OSHA would be unable to carry its burden to claim an exemption in a subsequent FOIA suit. The Court finds that Plaintiffs have done so.

(D.C. Cir. 2011) (quoting *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)).  But "[t]he 'committed to agency discretion' provision is 'a very narrow exception.'" *Robbins v. Reagan*, 780 F.2d 37, 46 (D.C. Cir. 1985) (per curiam) (quoting *Chaney*, 470 U.S. at 830).  With that in mind, the Supreme Court has instructed that, under § 702(a)(2), the presumption of judicial review is overcome and "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Chaney*, 470 U.S. at 830; *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (noting that § 702(a)(2) applies "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply" (internal quotation marks omitted) (quoting S. Rep. No. 79-752, at 26 (1945))).  When the challenged conduct is a decision not to take an enforcement action, however, the framework shifts, and courts "begin with the presumption that the agency's action is *unreviewable*."  *Sierra Club*, 770 F.3d at 855 (emphasis added).

Defendants first argue that OSHA's challenged conduct "was a mere policy statement regarding its exercise of prosecutorial discretion" and therefore warrants a presumption against reviewability.  MTD at 14; *see also Chaney*, 470 U.S. at 831.  In doing so, they rely exclusively on the language of OSHA's announcement on its website and statement in its notice of proposed rulemaking that, pending review of the Electronic Reporting Rule, OSHA would "not enforce [the July 1, 2018] deadline without further notice."  *See* MTD at 15 (quoting *Injury Tracking Application: Electronic Submission of Injury and Illness Records to OSHA*, https://www.osha.gov/injuryreporting (last visited Sept. 12, 2018); 83 Fed. Reg. at 36,496).  Even assuming, for purposes of argument, that a policy statement concerning prosecutorial discretion is entitled to a presumption against reviewability and that the Court could properly

consider these separate announcements at the motion-to-dismiss stage—questions the Court need not address—Defendants' argument fails.

Plaintiffs' complaint plausibly alleges that the May 2018 OSHA action they challenge was a wholesale *suspension* of the Electronic Reporting Rule, not merely a policy statement regarding OSHA's enforcement discretion. In it, Plaintiffs cite the very language used by OSHA when it announced that "[c]overed establishments with 250 or more employees *are only required* to provide their 2017 Form 300A summary data" and that "OSHA *is not accepting* Form 300 and 301 information at this time." Compl. ¶ 20 (quoting OSHA, *May 2018 Announcement*) (emphasis added and removed)). This is more than sufficient to allege that OSHA did not simply exercise its discretion not to enforce the Rule, but suspended its reporting requirement entirely such that covered employers are not legally obligated to submit the forms, regardless of whether OSHA decides to take action against them for not doing so. Such decisions, the Circuit has repeatedly held, "are tantamount to amending or revoking a rule." *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017) (per curiam); *see also Envtl. Def. Fund, Inc. v. EPA*, 716 F.2d 915, 920 (D.C. Cir. 1983) (per curiam); *Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 816 (D.C. Cir. 1983); *Council of the S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 n.28 (D.C. Cir. 1981); *see also* 5 U.S.C. § 551(4) (defining "rule" to include "statement[s] of general or particular applicability and future effect [that are] designed to implement, interpret, or prescribe law or policy"). As such, OSHA's action does not warrant a presumption against reviewability. The amendment or revocation of an agency rule amounts to substantive rulemaking subject to the APA's constraints and generally reviewable by courts. *See Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d at 813; *see also* 5 U.S.C. § 551(5) (defining "rule making" as the process of "formulating, amending, or repealing a rule").

To the extent Defendants seek refuge in the applicable statutory language, their argument fares no better. As an initial matter, as explained above, Plaintiffs have alleged conduct that amounts to substantive rulemaking, and thus that conduct, at the very least, is subject to the APA's procedural requirements for the promulgation of rules. *See* 5 U.S.C. § 553. Furthermore, for purposes of Plaintiffs' second cause of action alleging that OSHA's conduct was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," Compl. ¶ 27 (quoting 5 U.S.C. § 706(2)(A)), the Court does not agree that this constitutes one of "those rare instances where [the] 'statute[] [is] drawn in such broad terms that . . . there is no law to apply,'" *Overton Park*, 401 U.S. at 410 (quoting S. Rep. No. 79-752, at 26 (1945)).

Section 673(a) of the OSH Act mandates that OSHA "shall develop and maintain an effective program of collection, compilation, and analysis of occupation safety and health statistics." 29 U.S.C. § 673(a). Similarly, § 657(c)(2) mandates that OSHA "shall prescribe regulations requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses." *Id.* § 657(c)(2). And § 673(e) further provides that "[o]n the basis of the records made and kept pursuant to section 657(c) . . . , employers shall file such reports with [OSHA] as [it] shall prescribe by regulation, as necessary to carry out [its] functions under this chapter." *Id.* § 673(e). These mandatory requirements do not rest unfettered discretion with OSHA to promulgate—or not promulgate—regulations concerning reporting requirements and data compilation. OSHA *must* issue regulations necessary to fulfilling the purposes of the OSH Act and its administrative functions. *See id.* § 651(b) (declaring the purpose of the OSH Act to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . . (12) by providing for appropriate reporting procedures with respect to occupational safety and health

which procedures will help achieve the objectives of this chapter and accurately describe the nature of the occupational safety and health problem"). Indeed, the Electronic Reporting Rule itself, including its discussion of how the Rule promotes the purpose and goals of the OSH Act, *see* 81 Fed. Reg. at 29,626-27, provides a benchmark by which the Court can review OSHA's decision to subsequently *suspend* the Rule. *See Robbins*, 780 F.2d at 45 (finding, in response to the agency's reversal of its previous decision, "no difficulty in recognizing the traditional role that courts have always played in ensuring that the agency is continuing to act in the way that *it* considers to be the best implementation of its statutory mandate").

"These statutes [and regulations] provide enough law to qualify as 'law to apply' under the relevant APA precedents." *Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 718 F.3d 974, 977 (D.C. Cir. 2013). While the *substance* of the Court's review of OSHA's challenged conduct here will certainly be circumscribed by the nature and extent of OSHA's regulatory authority as described by the OSH Act, the Court does not conclude that the language of the statute is sufficient to overcome the APA's presumption of judicial review to preclude any review of OSHA's suspension of the Electronic Reporting Rule. *See Robbins*, 780 F.2d at 45 ("The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable under [5 U.S.C. § 706(a)(2)] unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."). Accordingly, the Court finds that the challenged agency action at issue here is not one that is "committed to agency discretion by law," and thus Defendants' motion to dismiss will be denied.

**III.    Motion for Preliminary Injunction**

Although the Court finds that Plaintiffs may proceed with their APA claims against Defendants, Plaintiffs nonetheless have failed to show that *preliminary* relief is warranted. Accordingly, Plaintiffs' motion for a preliminary injunction will be denied.

**A.    Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right," and only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 24 (2008). A plaintiff seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

While courts generally must "balance the strengths of the requesting party's arguments in each of the four required areas, . . . the basis of injunctive relief in the federal courts has always been irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Thus, "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Id.*; *see also CityFed Fin. Corp.*, 58 F.3d at 747; *Nat'l Parks Conservation Ass'n v. Semonite*, 282 F. Supp. 3d 284, 288 (D.D.C. 2017).

**B.    Analysis**

In support of their motion for a preliminary injunction, Plaintiffs contend that, in addition to making a strong showing on the other applicable factors, they are currently suffering and will continue to suffer irreparable harm. They insist that the partial suspension of the Rule "impairs

[their] ability to pursue their programs of obtaining and analyzing workplace safety data," which they claim "direct[ly] conflict[s] with their missions" and therefore amounts to harm sufficient to warrant preliminary injunctive relief. PI Mot. at 15. Plaintiffs further argue that "[b]ecause OSHA has proposed to rescind the requirement that establishments electronically submit their Form 300 and 301 data, without prompt injunctive relief [their] loss of access to the data may be irremediable." *Id.* (citation omitted). And finally, they claim that, apart from the risk posed by the ongoing rulemaking, any delay in accessing the data makes the data "stale" and therefore less valuable for their purposes. *See* PI Reply at 12-13.

This Circuit "has set a high standard for irreparable injury." *Chaplaincy*, 454 F.3d at 297. Not only must the injury "be both certain and great," and "actual and not theoretical," *id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)), but "the injury must be beyond remediation." *Id.* "The key word in this consideration," of course, "is *irreparable*." *Id.* (quoting *Wisc. Gas Co.*, 758 F.2d at 674); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (finding the harm to organizations' efforts to register voters irreparable given the impending election, after which "there c[ould] be no do over and no redress"). And it is here, the Court finds, that Plaintiffs fall well short.

First, the Court finds Plaintiffs' contention that there is an immediate risk of permanent harm because OSHA has undertaken notice-and-comment rulemaking to rescind the Rule misplaced. *See* PI Mot. at 15; PI Reply at 12. As an initial matter, Plaintiffs have cited no authority for the proposition that a *proposed* rule can justify preliminary injunctive relief. And the Court finds such a proposition dubious. OSHA is under no obligation to adhere to its original proposal—nor must it issue any new rule at all—and thus Plaintiffs' speculation that the result of the rulemaking will mirror the proposal and completely rescind the Electronic Reporting Rule is

not so "certain and immediate" as to amount to irreparable harm. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014); *see also Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 15 (D.D.C. 2014) (finding no irreparable harm from a proposed rule because "even after engaging in the rulemaking process, there is no guarantee the [agency] will actually develop a final rule").

Moreover, even if we assume that OSHA will imminently rescind the Electronic Reporting Rule, that impending action is not before the Court. Plaintiffs are challenging Defendants' allegedly unlawful *suspension* of the Electronic Reporting Rule in May 2018, which they contend amounted to substantive rulemaking subject to the requirements of the APA. *See* Compl. ¶¶ 20-29; PI Mot. at 9-10, 12. And OSHA will not affect any alleged harm caused to Plaintiffs by its original suspension of the July 2018 deadline—loss of access to data employers were required to submit by that date—by permanently rescinding the Rule *after* that compliance deadline passed and the obligations of covered employers were allegedly unlawfully postponed. *Cf. Natural Res. Def. Council, Inc. v. U.S. EPA*, 683 F.2d 752, 758-59, 759 n.15 (3d Cir. 1982) (reasoning that agency rulemaking to reinstate an amendment after postponing its effective date likely mooted plaintiff's challenge to the initial postponement because "none of the amendments [then] in effect had a specific compliance date or triggered further compliance obligations by becoming effective"). Thus, assuming that Plaintiffs are successful on the merits of their claims, the Court may still declare the earlier suspension of the Rule unlawful, require OSHA to recognize the July 2018 submission deadline, and give Plaintiffs the relief they seek—data that employers should have been required to submit to OSHA by July 2018. But to the extent Plaintiffs claim that they will suffer irreparable harm because OSHA may unlawfully rescind the

Electronic Reporting Rule in the future, that action is not before the Court—nor can it be—and Plaintiffs cannot rely on it to claim irreparable harm here.

Second, the Court is not persuaded by Plaintiffs claim that even *delay* in their ability to access and use the information submitted under the Rule inflicts irreparable harm. They rely principally on this Circuit's decision in *League of Women Voters* for the proposition that the alleged impairment to their organizational "missions" caused by the delay amounts to irreparable harm. *See* PI Mot. at 15; PI Reply at 11. But the Court of Appeals in that case, consistent with well-established case law, held further that to be *irreparable*, that organizational injury must also be irremediable absent preliminary relief. *See League of Women Voters,* 838 F.3d at 9. Demonstrating mere organizational injury is not enough. [6] Indeed, in *League of Women Voters*, the plaintiff organizations alleged that the defendants had impaired their efforts to register voters in time for an impending election in less than two months, after which, the court had no trouble concluding, the organizations' injury could not be redressed. *Id.* Beyond Plaintiffs' assertion regarding OSHA's current rulemaking process, which the Court rejected above, Plaintiffs make no claim in their motion that delayed access to the information would prevent them from conducting the same research and outreach activities they describe in their respective declarations.

Only in their reply do Plaintiffs raise the possibility that "delay in resolving this case will diminish the quantity and quality of data OSHA is able to collect." PI Reply at 12. At the outset, the Court is skeptical of Plaintiffs' eleventh-hour assertion, to which Defendants had no

---

[6] Though the Court has focused exclusively on the organizations' claimed injuries, the analysis would not differ for their individual members. Those members claim the same injury as a result of their inability to use the data, and thus suffer from the same deficiency for purposes of irreparable harm.

opportunity to reply.  *See MBI Grp., Inc. v. Credit Foncier du Cameroun*, 616 F.3d 568, 575

(D.C. Cir. 2010) (noting with approval that "district courts, like this court, generally deem

arguments made only in reply briefs to be forfeited" because "[r]eply briefs *reply* to arguments

made in the response brief—they do not provide the moving party with a new opportunity to

present yet another issue for the court's consideration" (citations omitted)).  Moreover, and

equally telling, Plaintiffs waited over three months after learning that OSHA had suspended the

Electronic Reporting Rule in May 2018—and over six weeks after filing their complaint—to

seek preliminary relief.  Such delay, though perhaps not dispositive, strongly discredits

Plaintiffs' claim that they are suffering irreparable harm due to the "diminish[ing] . . . quantity

and quality of the data."  *See Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An

unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because

such delay implies a lack of urgency and irreparable harm."); *see also Fund for Animals v.

Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) ("Our conclusion that an injunction should not issue

is bolstered by the delay of the appellants in seeking one."); *Air Transp. Ass'n of Am., Inc. v.

Export-Import Bank of the U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012) ("Plaintiffs' delay in

seeking relief . . . weighs against a finding of irreparable harm.").

   More fundamentally, however, as evidence of this assertion, Plaintiffs cite not to any

declaration submitted by their members or officers, but rather a declaration submitted by a

former *OSHA official* involved in developing the Electronic Reporting Rule.  *See* Michaels Decl.

¶¶ 12, 23-24.[7]  And in that declaration, the official merely makes the general assertion that the

---

[7] Plaintiffs did not attach this declaration to their original motion, and thus filed a motion for
leave from the Court to file this declaration and another declaration Plaintiffs attached to their
reply.  *See* Supp. Decl. Mot.; *see also* LCvR 65.1(c).  Although Defendants opposed this motion,
*see* Supp. Decl. Opp'n, because preliminary injunctive relief is not warranted even after

"intent of the rule from the beginning was to provide these data as quickly as possible, since stale data would be of little value." *Id.* ¶ 12. While the Court has no reason to doubt that intention by the Rule's drafters, *Plaintiffs* have not made any specific, non-speculative showing as to why they in particular have any exigent need for the data. The Court can imagine that, in general, data is more valuable the more timely it is, but plaintiffs seeking access to information are not by default entitled to preliminary injunctive relief. *See, e.g.*, *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014) ("[U]nder FOIA, it is difficult for a plaintiff to demonstrate 'irreparable harm' that is in fact 'beyond remediation' because he is entitled to obtain all responsive and non-exempt documents at the conclusion of the litigation." (quoting *Chaplaincy*, 454 F.3d at 297)); *but see Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007) (noting that a FOIA plaintiff might be able to show irreparable harm if it can demonstrate a "time sensitive" need for alerting the public to that information). And Plaintiffs here merely assume, relying on the broad statements about the purpose of the Rule made by the former OSHA official, that the information they seek will no longer be of value to them absent a preliminary injunction. To the contrary: on this record, "[t]here is no indication . . . that proceeding with the normal litigation process in this case will injure [Plaintiffs] in a way that is both 'certain and great.'" *Judicial Watch, Inc.*, 514 F. Supp. 2d at 10 (quoting *Wisc. Gas Co.*, 758 F.2d at 674). Therefore, the Court will not conclude, based solely on eleventh-hour speculation—and after Plaintiffs delayed significantly in requesting preliminary injunctive relief—that Plaintiffs have made a credible showing of a likelihood of irreparable harm.

---

consideration of Plaintiffs' supplemental filings, Plaintiffs' motion for leave to file will be granted.

Absent any likelihood of irreparable harm, preliminary injunctive relief is unwarranted, and Plaintiffs' motion will therefore be denied. *See GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143, 147 (D.D.C. 2013) ("A mere possibility of irreparable harm is not enough, . . . and a court may refuse to issue an injunction without considering any other factors when irreparable harm is not demonstrated.").

## IV. Conclusion and Order

For all of the above reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Declarations, ECF No. 10, is **GRANTED**, Defendants' Motion to Dismiss, ECF No. 13, is **DENIED**, and Plaintiffs' Motion for a Preliminary Injunction, ECF No. 7, is also **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 12, 2018