**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
)
PUBLIC CITIZEN HEALTH RESEARCH   )
GROUP, *et al.*,                                       )
)
                         Plaintiffs,            )          Civil Action No. 18-1729-TJK
)
            v.                                             )
)
ALEXANDER ACOSTA, *et al.*,                  )
)
                         Defendants.          )
———————————————————————)

**PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT**
**AND OPPOSITION TO DEFENDANTS' MOTION FOR STAY**

Michael T. Kirkpatrick (D.C. Bar No. 486293)
Adina H. Rosenbaum (D.C. Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

March 11, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

I.      The Court Should Enter Judgment for Plaintiffs. ............................................................. 1

II.     Plaintiffs are Entitled to the Requested Relief. ................................................................ 2

        A.  OSHA is judicially estopped from arguing against injunctive relief. ........................... 3

        B.  The Rollback Rule does not cure OSHA's APA violations. ......................................... 4

        C.  Remand is not appropriate. .......................................................................................... 6

        D.  The cost of compliance is no barrier to injunctive relief. ............................................. 7

        E.  None of the other concerns raised by OSHA support denying injunctive relief. ......... 8

III.    The Court Should Not Stay This Case Pending the Outcome of Plaintiffs' Challenge
        to the Rollback Rule ..................................................................................................... 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Air Alliance Houston v. EPA*,
    906 F.3d 1049 (D.C. Cir. 2018) ........................................................................6

*Air Transport Association of America v. DOT*,
    900 F.2d 369 (D.C. Cir. 1990) ..........................................................................5

*Allied-Signal, Inc. v. Nuclear Regulatory Commission*,
    988 F.2d 146 (D.C. Cir. 1993) ..........................................................................7

*A.L. Pharma, Inc. v. Shalala*,
    62 F.3d 1484 (D.C. Cir. 1995) ..........................................................................6

*Al's Service Center v. BP Products North America, Inc.*,
    599 F.3d 720 (7th Cir. 2010) ............................................................................3

*American Hospital Association v. Price*,
    867 F.3d 160 (D.C. Cir. 2017) ..........................................................................9

*Ameren Services Co. v. FERC*,
    880 F.3d 571 (D.C. Cir. 2018) ..........................................................................5

*Anacostia Riverkeeper, Inc. v. Jackson*,
    713 F. Supp. 2d 50 (D.D.C. 2010) ..................................................................10

*Bancoult v. McNamara*,
    227 F. Supp. 2d 144 (D.D.C. 2002) ..................................................................2

*Blackman v. District of Columbia*,
    185 F.R.D. 4 (D.D.C. 1999) ..............................................................................7

*Chamber of Commerce of U.S. v. SEC*,
    443 F.3d 890 (D.C. Cir. 2006) ........................................................................10

*Clean Air Council v. Pruitt*,
    862 F.3d 1 (D.C. Cir. 2017) ..............................................................................6

ii

*Daskalea v. Washington Humane Society*,
    577 F. Supp. 2d 90 (D.D.C. 2008) ...............................................................3–4

*Fox v. Clinton*,
    684 F.3d 67 (D.C. Cir. 2012) .............................................................................6

*Hawaii Longline Association v. National Marine Fisheries Service*,
    288 F. Supp. 2d 7 (D.D.C. 2003) .....................................................................10

*\*Heartland Regional Medical Center v. Sebelius*,
    566 F.3d 193 (D.C. Cir. 2009) ...............................................................6, 7, 11

*Independent U.S. Tanker Owners Committee v. Dole*,
    809 F.2d 847 (D.C. Cir. 1987) .......................................................................10

*National Community Reinvestment Coalition v. National Credit Union Administration*,
    290 F. Supp. 2d 124 (D.D.C. 2003) ..............................................................4, 5

*\*Natural Resources Defense Council v. National Highway Traffic Safety Administration*,
    894 F.3d 95 (2d Cir. 2018) ............................................................................4, 11

*Natural Resources Defense Council v. Southwest Marine, Inc.*,
    236 F.3d 985 (9th Cir. 2000) ............................................................................7

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .........................................................................................3

*New Jersey v. EPA*,
    626 F.2d 1038 (D.C. Cir. 1980) ......................................................................4

*Reeder v. FCC*,
    865 F.2d 1298 (D.C. Cir. 1989) ......................................................................4

**Statutes and Federal Rules**

5 U.S.C. § 553(b)(B) ...............................................................................................5

29 U.S.C. § 658(c) ..................................................................................................9

Federal Rule of Civil Procedure 55(d) ...................................................................2

iii

**Regulatory Materials**

Final Rule, Tracking of Workplace Injuries and Illnesses,
    84 Fed. Reg. 380 (Jan. 25, 2019) ......................................................................................4

## INTRODUCTION

Plaintiffs brought this action under the Administrative Procedure Act (APA) to challenge OSHA's suspension—without notice and comment and without a reasoned explanation—of the Electronic Reporting Rule's July 2018 deadline for covered employers to submit certain work-related injury and illness data recorded on OSHA Forms 300 and 301. OSHA moved to dismiss, arguing that its suspension of the requirement "was a mere policy statement regarding its exercise of prosecutorial discretion." Defs. Mot. Dismiss 14, ECF No. 13. Denying OSHA's motion, this Court held that OSHA's suspension of the requirement amounted to substantive rulemaking subject to the APA. Mem. Op. 22–23, ECF No. 17.

In its opposition to plaintiffs' motion for summary judgment, OSHA acknowledges that the Court has already rejected OSHA's defense, Defs. Opp. 2 n.2, ECF No. 26, and offers no further defense of the challenged action. Instead, OSHA argues that the Court should enter a stay and postpone ordering relief in this case pending resolution of a different case challenging different agency action—OSHA's subsequent rescission, following notice-and-comment rulemaking, of future reporting requirements. OSHA's request lacks merit.

## ARGUMENT

### I.    The Court Should Enter Judgment for Plaintiffs.

As plaintiffs have explained, OSHA violated the procedural rulemaking requirements of the APA by suspending the July 2018 compliance date without notice-and-comment. Pls. Mem. 10–12, ECF No. 18. OSHA also violated the substantive requirements of the APA by failing to provide a reasoned explanation to justify reversing course on an already promulgated rule. *Id.* at 12–15.

Although OSHA captions its memorandum as an "opposition" to plaintiffs' motion for summary judgment, OSHA asserts no defense to plaintiffs' APA claims. Indeed, OSHA's sole mention of the merits of plaintiffs' challenge is in a footnote in which OSHA states that plaintiffs are not entitled to summary judgment on the basis of a justiciability argument already rejected by this Court. Defs. Opp. 2 n.2 (citing Mem. Op. 2). By failing to offer any argument or cite any authority on the merits, OSHA has conceded liability. *See*, *e.g.*, *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded."). Relatedly, OSHA chose to default rather than comply with this Court's order that OSHA file its answer by March 4, 2019. *See* Minute Order of Feb. 4, 2019; *see also* Fed. R. Civ. P. 55(d) (allowing default judgment against federal government agencies where plaintiff establishes a right to relief).

Accordingly, the Court should enter judgment for plaintiffs.

## II.     Plaintiffs are Entitled to the Requested Relief.

To remedy OSHA's violations of the APA, the Court should order relief that puts plaintiffs back in the position they would have been in but for OSHA's unlawful action. Such relief would require OSHA to collect the 2017 Form 300 and 301 data that it would have collected in July 2018 had it not suspended the submission deadline.

Importantly, this Court has already considered the propriety of the relief requested by plaintiffs. In denying plaintiffs' motion for a preliminary injunction, the Court explained that plaintiffs had not shown a likelihood of *irreparable* harm because, if they prevail on the merits of their claims, "the Court may still declare the earlier suspension of the Rule unlawful, require OSHA to recognize the July 2018 submission deadline, and give Plaintiffs the relief they seek—

data that employers should have been required to submit to OSHA by July 2018." Mem. Op. 27. OSHA acknowledges the Court's statement, Def. Mem. 8, but argues that the balance of equities disfavors granting relief. OSHA is wrong.

### A.    OSHA is judicially estopped from arguing against injunctive relief.

As an initial matter, OSHA is foreclosed from arguing against an injunction requiring OSHA to collect the 2017 Form 300 and 301 data that it would have collected in July 2018 had it not unlawfully suspended the submission deadline. In opposing plaintiffs' motion for a preliminary injunction, OSHA argued that plaintiffs "cannot show irreparable harm from litigating their case in the normal course" because "*delayed access* to information for use in public advocacy is not an irreparable harm." Defs. Opp. to Mot. for Prelim. Inj. 11, ECF No. 8 (emphasis added). The Court agreed, denying preliminary relief on the ground that plaintiffs' harm was not irreparable because the Court could order OSHA to collect the data that "employers should have been required to submit to OSHA by July 2018." Mem. Op. 27.

Now that OSHA has conceded liability by failing to defend this case on the merits, OSHA argues that plaintiffs should be denied access to the 2017 data altogether—a full pivot from OSHA's previous position that plaintiffs faced only "delayed access." OSHA is barred from making this argument by the doctrine of judicial estoppel, which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation and internal quotation marks omitted); *see Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727–28 (7th Cir. 2010) (rejecting plaintiff's argument that defendant committed breach of contract where plaintiff previously obtained preliminary injunction on theory that contract had been terminated); *Daskalea v. Wash. Humane Soc'y*, 577 F. Supp. 2d 90, 98 (D.D.C. 2008) (rejecting

on judicial estoppel grounds plaintiff's argument that defendants in section 1983 action were private parties after previously arguing they were state actors).

**B.    The Rollback Rule does not cure OSHA's APA violations.**

OSHA asserts that plaintiffs should be denied relief because OSHA retroactively "cured" its procedural and substantive violations when it "conducted full notice-and-comment rulemaking to explain its reasons for suspending collection of the data from OSHA Forms 300 and 301 and promulgated a final rule rescinding these provisions on January 25, 2019." Defs. Mem. 13; *see* Final Rule, Tracking of Workplace Injuries and Illnesses, 84 Fed. Reg. 380 (Jan. 25, 2019) (the Rollback Rule). OSHA does not address the cases cited by plaintiffs that hold just the opposite. *See*, *e.g.*, *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d Cir. 2018) ("An agency may not promulgate a rule suspending a final rule and then claim that post-promulgation notice and comment procedures cure the failure to follow, in the first instance, the procedures required by the APA."); *see also Reeder v. FCC*, 865 F.2d 1298, 1304 (D.C. Cir. 1989) (finding that violation of APA's notice-and-comment requirement was not cured by the receipt of post-adoption comments); *New Jersey v. EPA*, 626 F.2d 1038, 1049–50 (D.C. Cir. 1980) (rejecting argument that a post hoc comment period cured an agency's failure to follow notice-and-comment procedures, recognizing that "Congress specified that notice and an opportunity for comment are to precede rule-making," and noting "the presumption that post hoc comment was not contemplated by the APA and is generally not consonant with it").

Instead, OSHA cites dicta in a district court decision as its sole authority for the proposition that, in some situations, "an agency can engage in new rulemaking to supersede defective rulemaking." Defs. Opp. 13 (quoting *Nat'l Cmty. Reinvestment Coalition v. Nat'l Credit Union Admin. (NCRC)*, 290 F. Supp. 2d 124, 137 (D.D.C. 2003)). The plaintiff in *NCRC* challenged an

4

interim rule issued without notice and comment that was re-issued as a final rule following notice and comment. 290 F. Supp. 2d at 130. In issuing the interim rule, the agency invoked the APA's good-cause exception after finding notice-and-comment procedures "impracticable, unnecessary, and contrary to the public interest." *Id.*; *see* 5 U.S.C. § 553(b)(B). The court dismissed the case for lack of standing, opined that issuance of the final rule rendered plaintiff's challenge to the interim rule moot, and did not reach the issue of whether the good cause exception applied. *Id.* at 138. *NCRC* is inapposite here for three reasons.

First, in contrast to the situation in *NCRC*, OSHA has not suggested that plaintiffs lack standing, and the court recognized in ruling on the motion for a preliminary injunction that they do. Second, OSHA has not suggested that this case is moot, and for good reason: The Rollback Rule does not impact the July 2018 deadline for employers to submit the 2017 data at issue here. Rather, it rescinds the submission requirement after the February 25, 2019, effective date of the Rollback Rule. *See Ameren Servs. Co. v. FERC*, 880 F.3d 571, 584 (D.C. Cir. 2018) (explaining that rulemaking "is of only future effect"). Third, OSHA did not purport to issue an interim final rule or invoke the APA's good-cause exception when it suspended the July 2018 submission deadline without notice and comment. Moreover, the D.C. Circuit "strictly enforce[s]" the APA's requirement that notice and comment *precede* rulemaking. *See Air Transport Ass'n of Am. v. DOT*, 900 F.2d 369, 379 (D.C. Cir. 1990), *vacated as moot*, 933 F.2d 1043 (D.C. Cir. 1991). Although "there might be circumstances in which defects in an original notice could be cured by an adequate later notice and opportunity to comment," the court "could reach such a conclusion only upon a compelling showing that the agency's mind remained open enough at the later stage." *Id.* (citation and internal quotation marks omitted). OSHA has not attempted to make such a showing here.

### C.    Remand is not appropriate.

OSHA suggests that the Court should "remand the case to OSHA to address any procedural failings without vacating its decision to suspend its collection of data." Defs. Opp. 12 n.4. Remand without vacatur would do nothing here except cause further delay.

"Failure to provide the required notice and to invite public comment … is a fundamental flaw that 'normally' requires vacatur of the rule," *Heartland Regional Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009), although remand *without* vacatur may be warranted "[w]hen an agency may be able readily to cure a defect in its explanation of a decision," *id.* at 198. OSHA's wholesale abdication of the rulemaking process is worlds apart from a "defect in its explanation." In suspending the July 2018 submission deadline, OSHA flouted the procedural and substantive requirements of the rulemaking process and simply posted a message on its website suspending the requirements of a validly promulgated final rule. The unlawfulness of OSHA's action was clear. *See*, *e.g.*, *Air Alliance Houston v. EPA*, 906 F.3d 1049, 1066–67 (D.C. Cir. 2018) (vacating an agency's delay of a compliance date and rejecting agency's argument that its intention to engage in rulemaking to potentially rescind or revise the rule justified the delay); *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017) (finding an agency's suspension of a compliance deadline pending reconsideration of the rule "tantamount to amending or revoking a rule," and vacating the suspension for failing to comply with the procedural and substantive provisions of the APA).

The cases OSHA cites all involve situations in which the agency followed correct procedures but failed to give a full or proper explanation of its action.[1] That is not the situation

---

[1] *See Fox v. Clinton*, 684 F.3d 67, 80 (D.C. Cir. 2012) (concluding plaintiff's nationality determination was arbitrary and capricious but remanding to agency for further explanation in recognition that in immigration context "there may be sensitive issues lurking that are beyond the ken of the court"); *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995) (remanding case to FDA where FDA followed proper procedures for drug approval but failed to provide an

here. Its action was a "fundamental flaw" that requires vacatur. *Heartland Regional*, 566 F.3d at 199.

### D.     The cost of compliance is no barrier to injunctive relief.

OSHA argues that it should not have to provide a remedy for its APA violations because to do so "would take about five months to complete and cost approximately $318,000." Defs. Opp. 13.  Such a time frame and monetary cost is hardly extraordinary. Indeed, the cost estimate is about one-twentieth of one percent of OSHA's annual budget.[2] OSHA fails to explain how the burden of collecting the data that OSHA should have collected in July 2018 militates against injunctive relief. Whatever minimal burden injunctive relief would put on the agency is far outweighed by plaintiffs' interest in the data—which plaintiffs and their members will use to analyze the causes of workplace injuries and illnesses and develop solutions—and the public interest in ensuring that OSHA obeys the law. *See Blackman v. Dist. of Columbia*, 185 F.R.D. 4, 7 (D.D.C. 1999) (observing that defendant's insistence that complying with the law would be "too costly" justified issuance of injunction); *Nat. Resources Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000) (district court properly issued injunction after concluding cost to defendant "was outweighed by the need for swift corrective action").

---

"adequate explanation" of relevant findings); *Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993) (remanding case to Nuclear Regulatory Commission where commission failed to explain why regulatory fee exemption did not apply to plaintiff); *Heartland Regional*, 566 F.3d at 199 (characterizing shortcoming as "agency's failure … adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule").

[2] *See* U.S. Dep't of Labor, Congressional Budget Justification, Occupational Safety and Health Administration, Fiscal Year 2019, at 4 (2018) (citing OSHA FY 2018 budget at $552 million), available at https://www.dol.gov/sites/dolgov/files/general/budget/2019/CBJ-2019-V2-12.pdf

**E.      None of the other concerns raised by OSHA support denying injunctive relief.**

OSHA argues that it should not have to collect the 2017 data because doing so "could result in the public disclosure of sensitive employee information." Defs. Opp. 13. The Court has already rejected this argument when it explained that the data fields from Forms 300 and 301 that covered employers must submit do not contain personally identifiable information and that OSHA could segregate and withhold any fields that did. *See* Mem. Op. 16–20 (finding it "highly unlikely that OSHA can withhold much of the information contained on Forms 300 and 301 submitted under the Electronic Reporting Rule," and concluding that "Plaintiffs would, through FOIA, obtain beneficial workplace injury and illness data from OSHA's Electronic Reporting Rule records").

Similarly, OSHA speculates that if the Court orders OSHA to collect the 2017 data, the employer response rate may be low because of lack of awareness or confusion regarding the requirement. Defs. Opp. 13–14. The Court rejected the same argument when it denied OSHA's motion to dismiss, finding that "there is little reason to assume that employers would encounter any more difficulty meeting the Rule's requirements—submission of records they are already required to maintain—simply because more time has elapsed since the calendar year in question." Mem. Op. 13. Further, even if OSHA's speculation is borne out, it provides no reason not to try to remedy OSHA's violation of the APA by ordering collection of the data. OSHA cannot rely on its own unlawful conduct to argue that the equities should tilt in its favor. And it is not up to OSHA to decide whether the data collected will be valuable to plaintiffs. Plaintiffs have stated without qualification that they are interested in obtaining whatever workplace injury and illness data they can. *See* Carome Decl. ¶¶ 3–4, ECF No. 7-2; Harrison Decl. ¶¶ 5, 7, ECF No. 7-4; Benjamin Decl. ¶¶ 3–4, ECF No. 7-3.

Finally, OSHA asserts that it cannot collect "good quality data" because of "uncertainty about OSHA's authority to enforce a retroactive information collection requirement." Defs. Opp. 14. OSHA is correct that the original deadline for employers to submit 2017 data was July 1, 2018, and OSHA is correct that its statute of limitations to enforce compliance is "six months from the occurrence of a violation." *Id.* (citing 29 U.S.C. § 658(c)). But in doubting its authority to enforce a future reporting deadline ordered as a remedy by this Court, OSHA again tries to benefit from a mess of its own making. OSHA suspended the July 2018 deadline and refused to accept employer submissions. Thus, no employer is currently in violation. *Cf. Am. Hospital Ass'n v. Price*, 867 F.3d 160, 161 (D.C. Cir. 2017) ("[I]n order for law . . . to command the performance of an act, that act must be possible to perform."). Once the Court enters judgment that the suspension was unlawful and orders OSHA to collect the 2017 data by a date certain, there will be a new submission deadline, and OSHA, if necessary, will be able to take enforcement action for six months from that date.

III.   **The Court Should Not Stay This Case Pending the Outcome of Plaintiffs' Challenge to the Rollback Rule.**

This case challenges, on procedural and substantive grounds, OSHA's May 2018 website announcement that it would not accept the submission of 2017 Form 300 and 301 data required by the rule then in effect. The Rollback Rule issued in January 2019 rescinds the requirement that employers submit Form 300 and 301 data for 2018 and later. Plaintiffs have challenged the Rollback Rule on substantive grounds.[3] *See* Compl., *Public Citizen Health Research Grp. v.*

---

[3] Six states have filed a similar challenge to the Rollback Rule. *See* Compl., *New Jersey v. Acosta*, No. 19-621 (D.D.C. Mar. 6, 2019), ECF No. 1.

*Acosta*, No. 19-166 (D.D.C. Jan. 25, 2019), ECF No. 1. OSHA wrongly argues that staying this case pending the outcome of that litigation would conserve resources and avoid confusion.

First, this case is ripe for decision. As described above, OSHA has conceded liability by failing to present any argument or cite any authority in opposition to plaintiffs' motion for summary judgment, and by failing to file an answer as ordered by the Court.

Second, the two cases challenge different final agency actions. The outcome of one case does not depend on the outcome of the other. This case challenges the May 2018 suspension of the July 2018 deadline to submit 2017 data. The other case challenges the January 2019 rescission of the reporting deadline for 2018 data (which had been March 2019) and future years. Contrary to OSHA's assertion, there is no risk of duplicative litigation or conflicting rulings that would justify a stay.

OSHA argues that several courts have imposed stays "in similar circumstances to this case," Def. Mem. 10, but the cases OSHA cites have nothing to do with staying one case pending the outcome of a different case. Rather, in those cases, courts struck down unlawful agency action but left the rules in place temporarily to allow the agency to cure the deficiencies or, where vacatur would leave a regulatory gap, to issue new regulations.[4] As discussed above, the deficiencies challenged here cannot be cured, and vacatur will leave no gap. OSHA does not argue otherwise,

---

[4] *See Chamber of Commerce of U.S. v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006) (vacating rule issued without notice-and-comment but withholding the mandate for ninety days to allow the agency to reopen the record for comment, noting that a majority of the regulated community was already in compliance with the rule); *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987) (vacating rule issued without adequate statement of basis and purpose, but withholding the mandate to allow the agency to undertake further proceedings); *Anacostia Riverkeeper, Inc. v. Jackson*, 713 F. Supp. 2d 50, 51–52 (D.D.C. 2010) (vacating improperly expressed pollution limits, but staying vacatur pending development of new limits where no party wanted the waters at issue to go without limits in the interim); *Haw. Longline Ass'n v. Nat'l Marine Fisheries Serv.*, 288 F. Supp. 2d 7, 12–13 (D.D.C. 2003) (vacating unlawful agency actions, but staying the mandate to allow agency to issue a new regulatory regime).

nor could it. Thus, the appropriate course of action here is to vacate the May 2018 announcement and order OSHA to require and accept the submissions that, but for OSHA's unlawful action, would have been due in July 2018. *See Heartland Regional*, 566 F.3d at 199.

Finally, OSHA claims that a decision in its favor in the litigation challenging the Rollback Rule will impact the propriety of ordering OSHA to collect the 2017 Form 300 and 301 data that it would have collected in July 2018 had it not suspended the deadline in violation of the APA. OSHA is wrong. Even if OSHA establishes in that litigation that its rescission of the submission requirement for post-2017 data complies with the substantive provisions of the APA, that rationale cannot retroactively cure OSHA's procedural violation of the APA with regard to the May 2018 suspension. *See*, *e.g.*, *Nat. Res. Def. Council*, 894 F.3d at 115 ("An agency may not promulgate a rule suspending a final rule and then claim that post-promulgation notice and comment procedures cure the failure to follow, in the first instance, the procedures required by the APA."). As the Court stated in denying plaintiffs' motion for a preliminary injunction, OSHA's rulemaking to rescind the submission requirement in the future did not create a risk of irreparable harm in connection with the 2018 suspension, because "permanently rescinding the Rule *after* that compliance deadline passed and the obligations of covered employers were allegedly unlawfully postponed" would "not affect any alleged harm caused to Plaintiffs by [OSHA]'s original suspension of the July 2018 deadline—loss of access to data employers were required to submit by that date." Mem. Op.  27 (emphasis in original).

## CONCLUSION

The Court should deny defendants' motion for a stay, enter summary judgment for plaintiffs, and order defendants promptly to notify covered employers that they must electronically submit OSHA Form 300 and 301 data that the rule required employers to submit by July 2018.

Dated: March 11, 2019

Respectfully submitted,

/s/ Michael T. Kirkpatrick

Michael T. Kirkpatrick (D.C. Bar No. 486293)
Adina H. Rosenbaum (D.C. Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*